Revised July 21, 1999

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 97-50872
_____


LUIS FERNANDO ALVIDRES-REYES; DANIEL NUNEZ; ROSANA DIAZ;
RICARDO FLORES; JOSE MANUEL LOPEZ; JUAN SEDILLO; MIGUEL
ANGEL PEREA; JULIO PUENTES; JOSE MANUEL ADAME; GENARO AMARO;
ARMANDO PALOMINO; VICENTE CHAVEZ; ESTELA HERNANDEZ; SANDRA
CASADO; JESUS REGALADO; EDUARDO RUBIO; ROBERTO VARGAS; JOSE
PILAR MORALES; ARTURO MARTINEZ; AMELIA TRUJILLO-CARMONA;
ESPERANZA GARCIA; FRANCISCA MEDRANO; GUADALUPE VASQUEZ;
LILIA GONZALEZ; PEDRO BARRIENTOS; ALFONSO JASSO; ROSA ELVA
OLIVAS; ELOISA MARTINEZ; ANA MARIA MARQUEZ; VERONICA GARDEA;
MARIA RAMIREZ; RAMIRO PAYAN DE SANTIAGO; ALBERTA OLIVAS;
MARIA REYES SEANES; RAMONA MARTINEZ; ESTELA GARCIA; JUAN
SEDILLO; GUILLERMINA JACQUEZ; MARIA IMELDA CHAVEZ; ARTURO
MARTINEZ FRACEL; NIDIA CORDERO; GERARDO CARREON AMAYA; MARIA
PATRICIA VARGAS; ROBERTO VARGAS; EDUARDO MONTOYA AGUIRRE;
GILBERTO DOMINUEZ SALCIDO; ALEJANDRO DOMINGUEZ SALCIDO;
ANGEL CORRALES; JORGE PINA QUIROZ; LILIA ANA DOMINGUEZ
BARRERA; MAR SOL FLORES; ALMA ALEJANDRA FLORES

Plaintiffs-Appellants,

v.


JANET RENO, Attorney General of the United States; DORIS
MEISER, Commissioner, Immigration & Naturalization Service;
LUIS GARCIA, District Director, Immigration & Naturalization
Service

Defendants-Appellees.


_____

Appeal from the United States District Court for the
Western District of Texas
_____

June 29, 1999

Before HIGGINBOTHAM, BENAVIDES, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

The plaintiffs, fifty resident aliens, brought this suit for mandamus, declaratory, and injunctive relief in the district court seeking to compel the Attorney General of the United States ("Attorney General") and the Immigration & Naturalization Service ("INS") to consider their applications for suspension of deportation under a now-repealed provision of the Immigration and Naturalization Act ("INA") rather than the more onerous criteria for cancellation of removal imposed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (Sept. 30, 1996).

The district court dismissed the complaint under Federal Rule of Civil Procedure 12(b)(6) because the plaintiffs failed to state a claim upon which relief could be granted. As the district court pointed out, IIRIRA continues INA's requirement that an alien must be adjudged removable (formerly "deportable") before he may apply for cancellation (formerly "suspension") of removal (formerly "deportation"). IIRIRA also maintains the Attorney General's executive discretion to decide when to commence proceedings, adjudicate cases, and execute removal orders, which was formerly established by comparable provisions of INA. Thus, the district court was correct that, in the absence of these prerequisites, the plaintiffs failed to state a claim to have the court require the

2

Attorney General to allow the filing or consideration of the plaintiffs' applications to suspend deportation.

There is, however, a more fundamental reason that the plaintiffs' cause cannot be heard -- the federal courts' lack of subject matter jurisdiction. The exclusive jurisdiction provision of IIRIRA, 8 U.S.C. § 1252(g), applies retroactively to deprive courts of jurisdiction to hear any cause by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders, subject to exceptions not applicable in the present case.

The Congressional aim of § 1252(g) is to protect from judicial intervention the Attorney General's long-established discretion to decide whether and when to prosecute or adjudicate removal proceedings or to execute removal orders. If successful, the plaintiffs' suit would substitute a court order for the Attorney General's decision to initiate and adjudge removals and require her by judicial fiat to consider the plaintiffs' applications for deportation under the former rather than the current legal standards. Consequently, the plaintiffs' suit must be dismissed because § 1252(g) protects from judicial intervention the Attorney General's exercise of her executive discretion whether to prosecute and adjudicate removal cases by depriving the courts of jurisdiction to hear such litigation or any cause arising therefrom. Accordingly, we vacate the district court's judgment and dismiss the plaintiffs' complaint for lack of subject matter

3

jurisdiction.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The plaintiffs in this case are fifty illegal aliens who have resided in the United States for at least seven years.  Beginning in June 1996, the plaintiffs, only one of whom currently is in deportation proceedings, submitted applications to the INS to be declared deportable and to have their deportations suspended under the less exacting pre-IIRIRA provisions of INA, codified at 8 U.S.C. § 1254.  In March 1997, before IIRIRA's effective date of April 1, 1997, defendant Luis Garcia, the INS district director, allegedly selected at random 20 aliens, other than the plaintiffs, for adjudication as deportable and for consideration of deportation suspensions.  According to the plaintiffs, Assistant Director Garcia took the position that, because of lack of personnel, no more than 20 such cases could be handled without interfering with the INS's first priority of deporting alien drug offenders.

In enacting IIRIRA, Congress repealed the suspension of deportation relief contained in § 244 of INA, 8 U.S.C. § 1254 (1982), replacing it with a new § 240A, 8 U.S.C. § 1229b (Supp. III 1997), entitled "Cancellation of Removal; Adjustment of Status." *See* IIRIRA §§ 304, 308(b)(7), 110 Stat. 3009-587, 3009-614 (1996). Both the suspension of deportation relief afforded under now-repealed § 244, and the new cancellation of removal provisions in § 240A, enable statutorily eligible applicants who have been

4

adjudged deportable (or removable) to apply for discretionary suspension (or cancellation) of deportation (or removal) and for adjustment of the alien's status to that of being lawfully admitted for permanent residence.

Before IIRIRA's enactment, § 244 of INA permitted aliens with seven years of residency to apply for suspension of deportation due to extreme hardship to the alien or a close family member.[1] Section 240A of IIRIRA requires that, to successfully apply for suspension or cancellation of deportation, an alien must have ten

---

[1] Section 244 provided in pertinent part:

**Suspension of deportation**

**(a) Adjustment of status for permanent residence; contents**

As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien (other than an alien described in section 1251(a)(4)(D) of this title) who applies to the Attorney General for suspension of deportation and --

(1) is deportable under any law of the United States except the provisions specified in paragraph (2) of this subsection; has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1254(a)(1) (1988) (repealed 1996).

years of residency and show exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.[2] 8 U.S.C. § 1229b. The new cancellation of removal provisions became effective 180 days after the date of the enactment of the IIRIRA, i.e., April 1, 1997. *See* IIRIRA § 309(a), 110 Stat. 3009-625 (1996); *INS v. Yang,* 519 U.S. 26, 29 n.1 (1996).

On March 31, 1997, one day before the general effective date of IIRIRA, the plaintiffs filed suit in district court seeking mandamus, declaratory, and injunctive relief compelling the defendants to adjudicate their applications for suspension of

---

[2] Section 240A provides in pertinent part:
**Cancellation of removal; adjustment of status.**
**. . .**
**(b) Cancellation of removal and adjustment of status for certain nonpermanent residents**
**(1) In general**
The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien --
(A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;
(B) has been a person of good moral character during such period;
(C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title; and
(D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.
8 U.S.C. § 1229b (Supp. III 1997).

deportation under the more lenient, pre-IIRIRA provisions of INA. In their complaint, the plaintiffs contend that they are eligible for suspension of deportation under the pre-IIRIRA provisions of INA; that, despite this eligibility, the INS has refused to "process" their suspension applications; and that IIRIRA "takes away their eligibility of present rights under Sec. 244(a) INA."[3]

The defendants filed a Rule 12(b)(1) and 12(b)(6) motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. The district court did not reach the defendants' jurisdictional challenge, concluding that the plaintiffs stated no cause of action because illegal aliens are not entitled to apply for suspension of deportation under either § 244 of INA or § 240A of IIRIRA unless they have been found to be deportable by an immigration judge. *Alvidres-Reyes v. Reno,* 981 F. Supp. 1008, 1010 (W.D. Tex. 1997). The district court also concluded that it lacked the power to compel the INS or the Attorney General to initiate deportation or removal proceedings against any of the plaintiffs because mandamus is not available to compel the discretionary acts of executive officials. *Id.* at 1012.

---

[3] The plaintiffs also alleged that the INS's refusal to consider their applications for suspension of deportation is discriminatory, arbitrary, malicious, and violative of due process and equal protection of the laws. Thereafter, the plaintiffs amended their complaint to allege a class action, and to allege that, after the filing of the complaint, one of the plaintiffs, Rosana Diaz, was arrested by the INS, which "now seeks to deport her."

According to the district court, the Attorney General, who is responsible for enforcing the deportation laws through the INS, has complete discretion in initiating deportation proceedings. *Id.* at 1012-13 (citing *Johns v. Department of Justice,* 653 F.2d 884, 889 (5th Cir. 1981)). Concluding that the plaintiffs were not entitled as a matter of law to the relief sought, the district court dismissed the action for failure to state a claim. This appeal ensued.

## II. DISCUSSION

In dismissing the complaint for failure to state a claim on which relief can be granted, the district court declined to consider the defendants' jurisdictional arguments. A federal court of appeals has a duty to inquire into the basis of its jurisdiction and of the jurisdiction of the district court. *New York Life Ins. Co. v. Deshotel,* 142 F.3d 873, 883 (5th Cir. 1998).

During the pendency of this appeal, the Supreme Court in *Reno v. American-Arab Anti-Discrimination Committee,* 119 S. Ct. 936 (1999), held that IIRIRA § 1252 deprives the federal courts of jurisdiction of a suit by resident aliens against the Attorney General seeking to prevent the initiation of deportation proceedings against them, although the aliens' suit was filed in 1987, and had been pending almost a decade before the enactment of IIRIRA in 1996. In that case, the INS, a division of the Department of Justice, instituted deportation proceedings against

8

eight resident aliens, charging them with being aliens who had advocated world communism under the now-repealed McCarran-Walter Act, *see* 8 U.S.C. §§ 1251 (a)(6)(D), (G)(v), and (H) (1982); and charging six of them, who were only temporary residents, with routine status violations such as overstaying a visa and failure to maintain student status, 8 U.S.C. §§ 1251(a)(2) and (a)(9) (1988). *American-Arab,* 119 S. Ct. at 938-39. The aliens responded with their own suit seeking declaratory and injunctive relief against the Attorney General, the INS, and various immigration officials. *Id.* at 939. The aliens alleged, *inter alia*, that they were being subjected to selective enforcement of the immigration laws in violation of their First and Fifth Amendment rights because they belonged to the Popular Front for the Liberation of Palestine. *Id.* The aliens' suit made four trips through the California federal district court and the Ninth Circuit. *Id.* The Attorney General's last appeal was pending when Congress passed IIRIRA which, *inter alia*, repealed the old judicial-review scheme set forth in 8 U.S.C. § 1105a and established a new (and significantly more restrictive) one in 8 U.S.C. § 1252. *Id*. at 940. After the Ninth Circuit affirmed the existence of jurisdiction under § 1252 and the district court's injunctions against the Attorney General, 119 F.3d 1367 (9th Cir. 1997), the Supreme Court granted certiorari, 118 S. Ct. 2059 (1998).

The Supreme Court in *Reno v. American-Arab Anti-Discrimination*

*Committee* vacated the judgment of the Ninth Circuit and remanded with instructions for it to vacate the judgment of the district court "[b]ecause 8 U.S.C. § 1252(g) deprives the federal courts of jurisdiction over [the aliens-]respondents' claims[.]" *American-Arab*, 119 S. Ct. at 947. Section 1252(g) provides:

> **(g) Exclusive Jurisdiction**
> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

8 U.S.C. § 1252(g) (Supp. III 1997).[4] The Court stated that § 1252(g) does not cover "the universe of deportation claims" but applies only to "three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *American-Arab*, 119 S. Ct. at 943. The Court explained:

> There was good reason for Congress to focus special attention upon, and make special provision for, judicial review of the Attorney General's discrete acts of "commenc[ing] proceedings, adjudicat[ing] cases, [and] execut[ing] removal orders" -- which represent the initiation or prosecution of various stages in the deportation process. At each stage the Executive has discretion to abandon the endeavor, and at the time IIRIRA was

---

[4] Section 1252(g) applies "without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings." IIRIRA, Pub. L. No. 104-208, § 306(c)(1), 110 Stat. 3009, 3009-612 (1996).

10

enacted the INS had been engaging in a regular practice (which had come to be known as "deferred action") of exercising that discretion for humanitarian reasons or simply for its own convenience. . . . Section 1252(g) seems clearly designed to give some measure of protection to "no deferred action" decisions and similar discretionary determinations, providing that if they are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed.

Id. at 943-44. (emphasis added) (other alterations in original) (internal citations and footnote omitted). According to the Court, "Section 1252(g) was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *Id.* at 944 n.9. The Supreme Court further said that "protecting the Executive's discretion from the courts . . . can fairly be said to be the theme of the [IIRIRA] . . . . It is entirely understandable . . . why Congress would want . . . the discretion-protecting provision of § 1252(g) applied even to pending cases: because that provision is specifically directed at the deconstruction, fragmentation, and hence prolongation of removal proceedings." *Id.* at 945. (examples omitted).

Accordingly, the Court concluded that "[the aliens'] challenge to the Attorney General's decision to 'commence proceedings' against them falls squarely within § 1252(g) -- indeed . . . the language seems to have been crafted with such a challenge precisely in mind -- and nothing elsewhere in § 1252 provides for

11

jurisdiction." *Id.* *Cf.* § 1252(a)(1) (review of final orders); § 1252(e)(2) (limited habeas review for excluded aliens); § 1252(e)(3)(A) (limited review of statutes and regulations pertaining to the exclusion of aliens).

In the present case, the plaintiffs-aliens, in effect, challenge the Attorney General's refusal to initiate proceedings, adjudicate them deportable, and consider their applications for suspension of deportation. Plaintiffs do not explicitly pray for the court to order the Attorney General to initiate proceedings or adjudicate their deportability. If successful, however, plaintiffs' suit would compel the Attorney General to do so in order to consider their applications for suspension of deportation.[5] Thus, the plaintiffs' suit necessarily calls for

---

[5] The district court concluded that because the plaintiffs had not been made subject to a deportation proceeding and found deportable by an immigration judge, they were ineligible to apply for suspension of deportation relief under pre-IIRIRA § 1254(a)(1). *Alvidres-Reyes,* 981 F. Supp. at 1010.

We agree with the district court that the decision on suspension of deportation (now termed "cancellation of removal") must be made in a pending deportation proceeding.

The current regulations governing applications for cancellation of removal provide that "[a]n application for the exercise of discretion under Section 240A of the Act <u>shall be submitted . . . to the Immigration Court having administrative control over the Record of Proceeding of the underlying removal proceeding</u> under section 240 of the Act." 8 C.F.R. § 240.20(a) (1999) (emphasis added). Furthermore, these regulations provide that the "<u>application may be filed only with the Immigration Court after jurisdiction has vested</u> pursuant to § 3.14 of this chapter." 8 C.F.R. § 240.20(b) (1999) (emphasis added). "Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service [INS]." 8 C.F.R. § 3.14(a) (1999).

12

judicial intervention to reverse the Attorney General's exercise of her discretion to not commence proceedings against the plaintiffs and to not adjudicate their deportations, which necessarily was included within her refusal to entertain their applications for suspension of deportations.

We conclude from the Supreme Court's discussion in *American-Arab*, and the authorities cited and quoted therein, that the Attorney General's executive discretion to decide or act to commence proceedings always has been considered inherently to include the ability to choose not to do so. Otherwise, the Attorney General would have no power of free decision or latitude of choice with respect to the commencement or deferral of removal proceedings. As was noted in *American-Arab*, "at the time IIRIRA was enacted the INS had been engaging in a regular practice (which had come to be known as 'deferred action') of exercising that discretion for humanitarian reasons or simply for its own convenience." *American-Arab,* 119 S. Ct. at 943. "'[T]he INS may decline to institute proceedings, terminate proceedings, or decline to execute a final order of deportation.'" *Id.* at 944 (quoting 6

---

Thus, pursuant to these regulations, which have the force and effect of law, an application for discretionary cancellation of removal may be filed only after an Immigration Court is vested with jurisdiction over a removal proceeding by the filing of a charging document by the INS. In this case, with the exception of one plaintiff, the INS has not filed a charging document. Therefore, those plaintiffs against whom no charging document has been filed may not apply to the Immigration Court for cancellation of removal.

CHARLES GORDON ET AL., IMMIGRATION LAW AND PROCEDURE § 72.03[2][h] (1998)). "'[I]n each such instance, the determination to withhold or terminate deportation is confined to administrative discretion. . . .'" *Id.* (quoting 6 GORDON ET AL., *supra* § 72.03[2][a]). Consequently, judicial intervention in cases in which the Attorney General has exercised her discretion not to commence proceedings or adjudicate cases would interfere with her discretionary determinations and lead to the deconstruction, fragmentation, and hence prolongation of removal proceedings at which the Supreme Court concluded that § 1252(g) is directed. *See id.* at 945.

## III. CONCLUSION

For the foregoing reasons, we conclude that the federal courts lack jurisdiction to hear the plaintiffs-aliens' challenge to the Attorney General's decision to decline to commence proceedings or to adjudicate deportations, or to hear the plaintiffs' claim for suspension of their deportations which concomitantly arises therefrom. All of these causes and claims fall within the discretion-protecting provisions of § 1252(g), which apply retroactively even to pending cases. Therefore, we vacate the judgment of the district court and dismiss this suit for lack of jurisdiction.

VACATED AND DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

h:\drafts\97\97-50872.dr6