**Mohan SAINI, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. CIV 99–0295–PHX–ROS.**

United States District Court, D. Arizona.

Aug. 24, 1999.

Dorothea Patricia Kraeger, Law Offices of Dorothea P Kraeger PC, Phoenix, AZ, for petitioner.

Cynthia M. Parsons, U.S. Attorney's Office, Phoenix, Russell J. Verby, Office of Immigration Litigation, Washington, DC, for respondent.

## ORDER

SILVER, District Judge.

On February 17, 1999, Petitioner Mohan Saini filed a "Complaint for Declaratory and Injunctive Relief and Petition for Writ of Habeas Corpus With Stay of Deportation" and a Motion for a Temporary Restraining Order ("TRO"). At a hearing on February 24, 1999, and by Order filed on March 2, 1999, this Court granted Saini's Motion for an Order enjoining Respondent I.N.S. from removing him pending resolution of an appeal before the Board of Immigration Appeals ("BIA").[1] Because no time frame is specified, the Order effectively grants a preliminary injunction rather than a TRO. Pending before the Court is Respondents' Motion for Relief from a Court Order Pursuant to Fed.R.Civ.P. 60(b) and subsequent Motion to District Court to Indicate whether it Will Grant the Rule 60(b) Motion While the Appeal is Pending.

### Background

After Petitioner entered the United States in December, 1991 without a valid immigration visa, the I.N.S. charged him with excludability. At a hearing on December 26, 1991, Saini's counsel filed an application for asylum and withholding of deportation. Neither Petitioner nor his counsel appeared at his exclusion hearing on February 25, 1992, and an Immigration Judge ("IJ") ordered him excluded from the United States in absentia. Petitioner alleges that, on May 22, 1998, his current counsel filed a Motion to Reopen the Exclusion Proceedings on the ground that Saini had never received notice of the February, 1992 hearing. An IJ denied the Motion to Reopen on the ground that the record contained sufficient proof that Saini's former counsel had obtained notice of the February, 1992 hearing by personal service. Saini's appeal of that decision is

---

1. The caption on Saini's pleadings identifies the I.N.S. as the Defendant, construed by the Court to mean Respondent. However, in the body of his Complaint and Petition, Saini refers to both the I.N.S. and Roseanne Son- chik, District Director of the I.N.S. for the Phoenix district, as the Defendants/Respondents. For ease of reference in the instant Order, the Court will refer interchangeably to either "the I.N.S." or "the Respondent".

pending before the Board of Immigration Appeals ("BIA"). Saini was taken into custody on January 27, 1999. He filed motions with both the I.N.S. and the BIA requesting a stay of deportation pending the decision on appeal, but they were denied.

Thereafter Saini filed the instant petition alleging that he did not obtain notice of the February, 1992 hearing from either the IJ or his original attorney. Following a hearing on February 24, 1999, the Court concluded "that removal of the Petitioner from this jurisdiction will deny him due process in purs[u]ing his appeal ... before the [BIA]," "that there is a potential issue of ineffective assistance of counsel before the [BIA]" and that this issue "has not been adequately considered by the [BIA]." The Court enjoined the I.N.S. from removing Petitioner from the jurisdiction.

On April 6, 1999, Respondent filed a Motion for Relief from Court Order pursuant to Federal Rule of Civil Procedure 60(b), arguing that, in light of the Supreme Court's decision in *Reno v. American–Arab Anti–Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999), issued the same day as the hearing in the instant action, this Court lacks jurisdiction over the habeas corpus petition. Petitioner disagrees, arguing that this Court retains jurisdiction.

### Standard Governing Motions for Reconsideration

■■■ Although Respondent cites Federal Rule of Civil Procedure 60(b) as the legal basis upon which it requests relief from this Court's Order enjoining the deportation of Petitioner, the cited rule is inapplicable. Rule 60 governs relief from a "final judgment, order or proceeding", not relief from a preliminary injunction. However, courts possess the inherent authority to reconsider orders that are not dispositive. *See Haedike v. Kodiak Research, Ltd.,* 814 F.Supp. 679 (N.D.Ill.1992) (addressing motion to reconsider an order denying a motion to dismiss); *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,*

99 F.R.D. 99, 101 (E.D.Va.1983) (addressing a Petitioner's motion to reconsider one sentence within an order denying a motion to dismiss); *Libront v. Columbus McKinnon Corp.,* No. CIV–83–858E, 1988 WL 66874 at *1 (W.D.N.Y. June 20, 1988) (addressing motion to reconsider an order denying a motion to dismiss and a motion for summary judgment). A motion for reconsideration should be granted only if (1) the Court has patently misunderstood a party; (2) the Court has made a decision outside the adversarial issues presented to it; (3) the Court has made an error not of reasoning but of apprehension; or (4) where there has been a controlling or significant change in the law or facts since the submission of the issue to the Court. *Above the Belt,* 99 F.R.D. at 101. The Court will treat the Respondent's Motion for Relief from Court Order as a Motion for Reconsideration of a nondispositive order, due to the purported "significant change in the law" resulting from the *AADC* decision. *See Above the Belt,* 99 F.R.D. at 101.

### Discussion

Prior to the Supreme Court's decision in *AADC,* the Ninth Circuit had concluded that 8 U.S.C. § 1252(g), a jurisdictional provision of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), did not divest the federal courts of jurisdiction over habeas actions filed pursuant to 28 U.S.C. § 2241. *See Magana–Pizano v. I.N.S.,* 152 F.3d 1213, 1221 (9th Cir.), *amended,* 159 F.3d 1217 (9th Cir.1998), *vacated,* ── U.S. ──, 119 S.Ct. 1137, 143 L.Ed.2d 206 (1999). However, the Supreme Court vacated the Ninth Circuit's decision in *Magana–Pizano* for reconsideration in light of the *AADC* decision.[2] *Magana–Pizano,* 119 S.Ct. at 1137. Respondent argues that, in accordance with the Supreme Court's analysis in *AADC,* this Court lacks jurisdiction over Petitioner's cause of action.

---

**2.** The Ninth Circuit has not yet issued a new opinion in *Magana–Pizano.*

The statute at issue in *AADC* was 8 U.S.C. § 1252(g), a jurisdictional statute which provides:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under the Act.

The Supreme Court rejected the parties' assumption that § 1252(g) "covers the universe of deportation claims". *AADC*, 525 U.S. at ——, 119 S.Ct. at 943. Rather, the Supreme Court construed the provision "narrow[ly]" as barring jurisdiction only over claims arising from three actions by the Attorney General expressly listed in the statute—her "decision or action" to " 'commence proceedings, adjudicate cases, or execute removal orders' ". *AADC*, 525 U.S. at ——, ——, 119 S.Ct. at 943, 945 (quoting § 1252(g)). According to the Supreme Court, it was "implausible that the mention of these three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings". *Id.* The Supreme Court was not aware of any other statute in the United States Code in which language barring jurisdiction in specified circumstances had been interpreted as imposing a general jurisdictional bar. *Id.*

Confirming that the three listed categories, "commenc[ing] proceedings, adjudicat[ing] cases, or execut[ing] removal orders" do not encompass all deportation claims, the Supreme Court listed examples of actions or decisions during the deportation process that do not fall within these categories. *See id.* These examples include "the decision to open an investigation . . . to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order." *Id.* In a subsequent decision, the Sixth Circuit determined that some of these examples would have fit within an expansive interpretation of § 1252(g). *Mustata v. United States Dep't of Justice*,

179 F.3d 1017, 1021 (6th Cir.1999). Thus, the Sixth Circuit concluded, the examples are consistent with a narrow reading of the statutory provision. *Id.* This Court agrees with the Sixth Circuit's analysis.

The Supreme Court also provided considerable guidance about the types of acts that fit within the three distinct categories of "decision or action" to "commence proceedings, adjudicate cases, or execute removal orders". ´ *See AADC*, 525 U.S. at ——–——, 119 S.Ct. at 943–44. The Court provided the following explanation:

> There was good reason for Congress to focus special attention upon, and make special provision for, judicial review of the [three] discrete acts [listed in the statute]—which represent the initiation or prosecution of various stages in the deportation process. At each stage the Executive has discretion to abandon the endeavor, and at the time IIRIRA was enacted the INS had been engaging in a regular practice (which had come to be known as "deferred action") of exercising that discretion for humanitarian reasons or simply for its own convenience. . . . However, the INS's exercise of this discretion opened the door to litigation in instances where the INS chose not to exercise it. . . . *Section 1252(g) seems clearly designed to give some measure of protection to "no deferred action" decisions and similar discretionary determinations,* providing that if they are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed.

*Id.* 119 S.Ct. at 943–44 (footnotes omitted) (emphasis added). The Supreme Court added: "Section 1252(g) was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion. It does not tax the imagination to understand why it focuses upon the stages of administration where those attempts have occurred." *Id.* at 944 n. 9.

The Supreme Court proceeded to apply its analysis of the § 1252(g) jurisdictional bar to the action before it. Resident aliens filed the action in *AADC* after the I.N.S instituted deportation proceedings against them. *Id.* at 938. The resident aliens sought to prevent the initiation of deportation proceedings on the ground that the I.N.S. was selectively enforcing immigration laws by targeting them for deportation "because of their affiliation with a politically unpopular group." *Id.* at 938–39. The Supreme Court concluded that this action "falls squarely within § 1252(g)—indeed ... the language [of the statute] seems to have been crafted with such a challenge precisely in mind." *Id.* at 945. Due to the bar of § 1252(g), the courts lacked jurisdiction over the resident aliens' claims. *Id.* at 947.

In *AADC*, the Supreme court expressly declined to address the issue of the impact of § 1252(g) on federal jurisdiction over § 2241 habeas actions in the deportation context. Rather, the Supreme Court merely noted a split in the circuit courts on the issue. *See AADC*, 525 U.S. at —— & n. 7, 119 S.Ct. at 942 & n. 7.

A Ninth Circuit decision issued since *AADC* reiterates the Supreme Court's analysis but provides no additional clarification. In *Hose v. I.N.S.* ("*Hose II*"), 180 F.3d 992, 994–95 (9th Cir.1999), an *en banc* panel of the Ninth Circuit interpreting *AADC* rejected a three-judge panel's initial decision in *Hose I*, issued prior to *AADC* and broadly interpreting § 1252(g) as a bar to jurisdiction over a habeas petition. *See Hose II*. In so doing, the *en banc* panel quoted the portion of *AADC* stating that the § 1252(g) bar applies only to the Attorney General's decision to take one of the three actions listed in the statute—"commence proceedings, adjudicate cases, or execute removal orders". *See id.* 119 S.Ct. at 938 (quoting *AADC*, 525 U.S. at ——, 119 S.Ct. at 943 (quoting § 1252(g))). The decision contains no guidance about the types of actions that fall within the jurisdictional bar.

A Fifth Circuit decision issued subsequent to *AADC* provides an example of another claim to which the jurisdictional bar of § 1252(g) applies. Relying on *AADC*, the Fifth Circuit concluded that the federal courts lacked jurisdiction over a suit in which the plaintiffs, fifty aliens residing in the United States illegally, sought mandamus, declaratory, and injunctive relief to compel the Attorney General and the I.N.S. to consider their applications for suspension of deportation under less-exacting pre-IIRIRA provisions of the INA. *Alvidres–Reyes v. Reno*, 180 F.3d 199, 201–202, 206 (5th Cir.1999). Because the Attorney General had never adjudicated the issue of whether these aliens were deportable, the Fifth Circuit reasoned that the suit, if successful, would necessitate judicial intervention into her exercise of discretion to refuse to commence such proceedings. *Id.* at 205.

*Alvidres–Reyes* is similar to *AADC* in that action on the merits in either case would constitute judicial intervention into the Attorney General's exercise of discretion. The cases differ only in that, in *AADC*, the Attorney General had exercised discretion to not defer removal proceedings, whereas in *Alvidres–Reyes* she had exercised discretion to not commence adjudication of deportability.

In contrast to *AADC* and *Alvidres–Reyes*, decisions by the Fourth and the Eleventh Circuits illustrate two situations in which the jurisdictional bar of § 1252(g) did not apply. In *Selgeka v. Carroll*, 184 F.3d 337 (4th Cir.1999), an alien filed a petition for writ of habeas corpus alleging that his right to due process was violated because he was not allowed to present his application to an immigration judge at a hearing. *Id.* at 341. Instead, an I.N.S. officer considered his asylum application and conducted only an informal interview. *Id.* The Fourth Circuit concluded that this claim did not involve a challenge to the exercise of the Attorney General's prosecutorial discretion. *See id.* at 342.

In *Tefel v. Reno*, 180 F.3d 1286 (11th Cir.1999), aliens filed an action challenging the BIA's interpretation of a new stop-time provision enacted as part of IIRIRA.[3] *Id.* at 1289. The BIA concluded that the stop-time provision applied to aliens placed in deportation proceedings prior to the date of IIRIRA's enactment. *Id.* at 1290. The plaintiff in *Tefel* challenged the BIA's interpretation on both statutory and constitutional grounds, including due process and equal protection. *Id.* The Eleventh Circuit concluded that these challenges to the stop-time provision did not involve a challenge to the Attorney General's exercise of prosecutorial discretion and thus § 1252(g) did not divest the court of jurisdiction over the action. *Id.* at 1298.

■ With this background in mind, the Court proceeds to consider whether § 1252(g) divests this Court of jurisdiction over the instant action. The I.N.S. argues that § 1252(g) bars the exercise of jurisdiction over the instant action because Saini challenges one of the three express acts to which the statute's jurisdictional bar applies—the Attorney General's decision to "execute removal orders". The I.N.S. interprets this provision broadly as barring jurisdiction over all actions, regardless of type, in which a stay of deportation is part of the relief requested. The I.N.S. argues:

> In an effort to stave off his removal, Saini filed a complaint for injunctive relief coupled with a motion for a[TRO]. The obvious goal of this maneuver was an attempt to frustrate the Attorney General's lawful decision to execute the deportation order. Regardless of the fact that Saini's petition for a writ of habeas corpus alleges ineffective assistance of counsel, his ultimate goal is to delay and perhaps prevent his deportation. . . . Obviously, Saini's cause of action is an effort to prevent a lawful

deportation and as such his entire case turned on his motion to stay deportation alone.

(Resp.'s Mem. of April 6, 1999 at 8). Because the I.N.S. construes Saini's action, regardless of its underlying basis, as a challenge to his removal, the I.N.S. concludes the Court lacks jurisdiction over the action in its entirety.

The I.N.S.'s argument about the types of actions subject to the jurisdictional bar of § 1252(g) is inconsistent with the Supreme Court's narrow construction of the statute in *AADC*. The basis of Saini's action is the claim that ineffective assistance of his counsel in 1992 resulted in a denial of due process because he did not obtain notice of his exclusion hearing. *Cf. Mustata*, 179 F.3d at 1022 & n. 6 (discussing a similar claim). Unlike the claim in *AADC*, this claim is not a challenge to either a "no deferred action" decision or to a similar discretionary determination by the Attorney General. *See id.* at 1023. The facts relevant to Saini's due process claim occurred well before any decision by the Attorney General to "execute [a] removal order." *See id.* Because the bar of 1252(g) applies only to actions challenging the Attorney General's exercise of prosecutorial discretion, in specific circumstances, the bar does not apply to Saini's claim.

Contrary to the I.N.S.'s argument, Saini does not convert his claim into one challenging the I.N.S.'s decision to "execute [a] removal order" merely by requesting a stay of removal. *See id.* The Sixth Circuit responded to a similar argument as follows:

> The fact that the Mustatas in their petition seek a stay of deportation does not make their claim one against the decision to execute a removal order. The

---

**3.** The stop-time provision is a limitation on another provision of IIRIRA, under which a permanent resident alien is eligible for cancellation of removal if he or she "has resided in the United States continuously for seven years after having been admitted in any sta-

tus." *Id.* at 1289 (quoting 8 U.S.C. § 1229b(a)). Pursuant to the stop-time provision, an alien's period of residence ends once he or she either is served with a "notice to appear" for removal proceedings or commits certain criminal offenses. *Id.*

substance of their claim is that their counsel's [ineffective assistance] resulted in a violation of their due process rights. Whether or not the Attorney General executes a removal order against the [Petitioners] is immaterial to the substance of this claim. *Respondents' argument to the contrary confuses the substance of the Mustatas' claim with the remedy requested.*

*Mustata,* 179 F.3d at 1023 (emphasis added).

In the alternative, the I.N.S. argues that, even if the Court has jurisdiction over the due process/ineffective assistance of counsel claim, the Court lacks jurisdiction over Saini's Motion to Stay Deportation because the Motion involves a challenge to the Attorney General's decision to "execute removal orders" and thus falls within the jurisdictional bar of § 1252(g). This argument likewise is inconsistent with the Supreme Court's narrow construction of § 1252(g). The statute bars jurisdiction over a narrow group of actions in which the subject matter is a challenge to the Attorney's General's exercise of prosecutorial discretion, *see Mustata,* 179 F.3d at 1023, not actions involving a completely different subject matter in which a stay of deportation is merely requested as a temporary remedy. To conclude otherwise would be to effectively interpret § 1252(g) as encompassing all deportation claims in which a stay is requested, because denial of the request for stay and the resultant removal of the claimant would render the underlying claim moot. The I.N.S. cannot employ § 1252(g) indirectly as a jurisdictional bar of claims that the statute does not bar directly.

Because § 1252(g), as interpreted by the Supreme Court in *AADC,* does not divest this Court of jurisdiction over Saini's petition, the I.N.S.' Motion for Relief from Court Order, construed as a Motion for Reconsideration of a nondispositive order, will be denied.

In a Supplement filed on June 23, 1999, two and one-half months after the date on which the Motion for Relief from· Court

Order was filed, April 6, 1999, the I.N.S. set forth new legal arguments in support of its request for relief. The I.N.S. begins by arguing that the Court applied the incorrect standard when it enjoined Saini's deportation because it indicated that Saini had only a "slight likelihood of success on the merits." (*See* Order, March 2, 1999).

■ To obtain a temporary restraining order or a preliminary injunction, a party must demonstrate either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in its favor. *Micro Star v. Formgen, Inc.,* 154 F.3d 1107, 1109 (9th Cir.1998) (internal quotation omitted). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases and the probability of success decreases." *Arcamuzi v. Continental Air Lines, Inc.,* 819 F.2d 935, 937 (9th Cir. 1987) (internal quotation omitted). The Court concluded that the finding of a "slight likelihood of success on the merits" is equivalent to a finding that Petitioner has demonstrated the "irreducible minimum" of either "a fair chance of success on the merits, or questions serious enough to require litigation." *See id.*

The I.N.S. further argues in the supplement that the Court incorrectly assessed the likelihood of success on the merits for two reasons: (1) an exclusion proceeding is civil, not criminal, and thus the Sixth Amendment guarantee of effective assistance of counsel is inapplicable, and (2) an alien in exclusion proceedings has no due process right to effective assistance of counsel. Petitioner's Response to the Supplement does not adequately address these issues. During the hearing on the request for injunctive relief, the Court construed the claim for the first time as raising the issue of ineffective assistance of counsel and thus the I.N.S. did not have an opportunity to submit pleadings addressing the issue before the hearing. However, the

I.N.S. could have raised these arguments in its initial Motion for Relief from the Court's Order. Neither the Federal Rules of Civil Procedure nor the Local Rules for the United States District Court in Arizona contemplate the filing of a supplement raising entirely new arguments. The Court will treat the Supplement as a second Motion for Reconsideration and Order Petitioner to file a Response fully addressing the arguments raised therein.

Accordingly,

**IT IS ORDERED** treating Respondent's Motion for Relief from Court Order as a Motion for Reconsideration and denying the Motion. (Dkt.# 8).

**IT IS FURTHER ORDERED** that the Clerk's office shall docket Respondent's Supplement to the Motion for Relief from Court Order as a second Motion for Reconsideration. (Dkt.# 17).

**IT IS FURTHER ORDERED** that Petitioner shall file a Response fully addressing the arguments raised in Respondent's Supplement, now treated as a Motion for Reconsideration. The Response is due no later than Friday, September 10, 1999. In filing the Response, Petitioner shall comply with the requirements of Local Rule 1.10.

**IT IS FURTHER ORDERED** denying as Moot Respondent's "Motion to District Court to Indicate Whether It will Grant the Motion for Relief Pursuant to Rule 60(b)". (Dkt.# 20).