USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-2317

 TASFA WOLDE WALLACE,

 Appellee,

 v.

 JANET RENO, ET AL.

 Appellants.

No. 99-1596

 CARLOS ALBERTO LEMOS,

 Petitioner, Appellant,

 v.

 IMMIGRATION AND NATURALIZATION SERVICE,

 Respondent, Appellee.

 APPEALS FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Nancy Gertner, U.S. District Judge]
 [Hon. Robert E. Keeton, U.S. District Judge]

 
 Before

 Boudin, Circuit Judge,
 
 Coffin and Campbell, Senior Circuit Judges.
 
 
 
 Edward J. Duffy, Office of Immigration Litigation, Department
of Justice, with whom David W. Ogden, Acting Assistant Attorney
General, Civil Division, and Christopher C. Fuller, Senior
Litigation Counsel, were on brief for appellants Janet Reno, et al. Christopher J. Meade and Frederic A. Marzilli for petitioner
Carlos Alberto Lemos.
 Randy Olen for appellee Tasfa Wolde Wallace.
 David M. McConnell, Assistant Director, Civil Division,
Department of Justice, with whom David W. Ogden, Acting Assistant
Attorney General, Laura A. Smith, Civil Division, Department of
Justice, and Frank J. Crowley, Special Assistant United States
Attorney, Immigration and Naturalization Service, were on brief for
respondent Immigration and Naturalization Service. 

October 26, 1999

 
 

 BOUDIN, Circuit Judge. This pair of cases is the next
installment in a series presenting legal questions of reviewability
and retroactivity under newly enacted immigration statutes. The
issues are legal ones, which we review de novo, and arise out of
the following facts.
 In No. 99-1596, the appellant is Carlos Lemos, a native
of Portugal who entered the United States as an immigrant on
December 18, 1974. In June 1995, Lemos was convicted in Rhode
Island state court of unlawfully delivering cocaine. As a result,
the Immigration and Naturalization Service ("INS") began
deportation proceedings against Lemos on August 16, 1995. Under
the Immigration and Nationality Act ("INA"), an alien is deportable
if convicted of an aggravated felony or any controlled substance
violation (other than possession of less than 30 grams of marijuana
for personal use). 
 Lemos conceded deportability on September 24, 1996, and
sought a waiver of deportation under section 212(c) of the INA as
it existed before April 24, 1996, as codified at 8 U.S.C. 1182(c)
(1994). This provision, although explicitly directed at certain
excludable aliens not yet admitted, had been read to give the
Attorney General discretionary authority to waive deportation for
aliens already within the United States who were deportable for
having committed aggravated felonies or controlled substance
violations, see Francis v. INS, 532 F.2d 268 (2d. Cir. 1976); see
also Almon v. Reno, No. 98-2055, 1999 WL 721637, at *2-3 (1st Cir.
Sept. 21, 1999). Congress thereafter precluded waiver for
aggravated felons who had served five years in jail. See
Immigration Act of 1990 ("IMMACT"), Pub. L. No. 101-649, 511(a),
104 Stat. 4978, 5052.
 After Lemos's deportation proceeding had begun but before
it was completed, Congress enacted two new statutes amending the
INA: these amendments, commonly reduced to the acronyms AEDPA and
IIRIRA, were enacted on April 24, 1996 and September 30, 1996,
respectively. Pertinently, the amendments were designed to limit,
even beyond IMMACT, the Attorney General's authority to waive
deportation for certain felons; and, by complementary
jurisdictional changes, Congress sought to curtail judicial review,
especially for this same class of felons.
 Substantively, AEDPA enlarged the existing statutory ban
on discretionary waivers of deportation. Under the newly revised
INA section 212(c), waivers could not be granted to an alien
convicted of a drug offense (minor marijuana convictions aside)
regardless of the amount of jail time served. See AEDPA 440(d). 
As for IIRIRA, it contained further changes to the waiver rules but
we ignore those changes here because IIRIRA explicitly provided
that only its "transitional rules," and not the new waiver and
other permanent provisions, applied to proceedings, like Lemos's,
commenced before April 1, 1997. See IIRIRA 309(c).
 The other set of changes that concern us involve judicial
review. Under the old INA, deportation orders were reviewable
directly in the courts of appeals, see 8 U.S.C. 1105a(a) (1994),
but the statute provided that a deportee in custody could also
resort to habeas corpus, see 8 U.S.C. 1105a(a)(10) (1994). AEDPA
repealed this explicit habeas provision, see AEDPA 401(e), and
replaced it with a specific prohibition on "review by any court" of
"any final order" deporting an alien "by reason of" the commission
of specified criminal offenses, including that of which Lemos was
convicted. AEDPA 440(a).
 On April 29, 1997, the immigration judge found that
AEDPA's expansion of the category of persons not eligible for
waivers barred Lemos from such relief and ordered him deported. On
this ground, the Board of Immigration Appeals ("BIA") dismissed his
appeal. In the meantime, this court had held that the AEDPA ban on
"review by any court" of final orders of deportation against those
in Lemos's "by reason of" category became effective immediately
upon enactment of AEDPA and applied to pending deportation
proceedings, thus preventing a direct appeal to the court of
appeals in such cases. Kolster v. INS, 101 F.3d 785, 790 (1st Cir.
1996).
 On February 12, 1999, Lemos petitioned for habeas corpus
in the district court pursuant to 28 U.S.C. 2241. He asserted
that AEDPA's new limitation on waivers was erroneously being
applied retroactively as to him. The district court (Judge
Keeton) dismissed the habeas petition for lack of jurisdiction,
finding that a contrary position taken by this court affirming
habeas jurisdiction in Goncalves v. Reno, 144 F.3d 110, 123 (1st
Cir. 1998), cert. denied, 119 S. Ct. 1140 (1999), had been
undermined by Reno v. American-Arab Anti-Discrimination Comm., 119
S. Ct. 936 (1999). Lemos now appeals to us.
 In No. 98-2317, the appellee is Tasfa Wallace, a native
of Jamaica, who entered this country as an immigrant on May 10,
1988. In February 1996, Wallace was convicted in Rhode Island
state court after pleading guilty to possessing marijuana with
intent to deliver. Based on that conviction, the INS served
Wallace on March 20, 1996, with an order to show cause charging him
with deportability. The show cause order was filed with the Office
of the Immigration Judge on June 14, 1996. 
 On December 18, 1996, Wallace conceded deportability and
indicated his intention to apply for a discretionary waiver of
deportation under section 212(c) of the old INA. The hearing was
continued until August 1997. As with Lemos, the immigration judge
in a resumed hearing on August 18, 1997 found Wallace ineligible
for waiver because section 440(d) of AEDPA had enlarged the
category of persons for whom waivers were prohibited to include
drug offense felons like Wallace. The BIA dismissed Wallace's
appeal on May 5, 1998, on the same basis.
 Wallace then filed a habeas petition in the district
court, claiming that it was impermissibly retroactive to apply
AEDPA's new limitation on waivers to him. On October 7, 1998, the
district court (Judge Gertner) granted the petition, agreeing with
Wallace that the limitation could not be applied to him because
AEDPA had not yet been enacted when he pleaded guilty in his
underlying criminal case. Wallace v. Reno, 24 F. Supp.2d 104 (D.
Mass. 1998). Acting prior to American-Arab, the district court
premised its habeas authority on our Goncalves decision. The
government now appeals from this decision.
 At the threshold of both appeals is the question whether
habeas is available to those who, like Lemos and Wallace, are
subject to IIRIRA's transitional rules (because proceedings to
deport them began prior to April 1, 1997). The transitional rules
treat such persons as subject to the INA as modified by AEDPA, but-
-with a couple of qualifications--not as further modified by
IIRIRA. Under this transitional rules regime, the provisions
already cited preclude "review" and "appeal" of a final deportation
order by persons deportable "by reason of" drug felonies. The
government argues that American-Arab has undermined Goncalves's
ruling that district courts still have authority to consider habeas
petitions in transitional rule cases.
 In Goncalves, this court held that AEDPA's repeal of the
INA provision recognizing habeas as a remedy for aliens in custody
was not an affirmative ban on habeas jurisdiction. Goncalves, 144
F.3d at 121. The court declined to treat the AEDPA repeal as
qualifying the general authority of courts to grant habeas
petitions for persons held in violation of the Constitution or laws
of the United States. 28 U.S.C. 2241 (1994). Goncalves said
that repeals of habeas by implication are not favored and that
without habeas, AEDPA and IIRIRA's statutory bans on review or
appeal would otherwise preclude any court from considering
statutory challenges brought by a person deportable "by reason of"
a covered offense. Goncalves, 144 F.3d at 122.
 When a panel of this circuit has decided an issue,
another panel will ordinarily not revisit that issue; but, of
course, this limitation does not apply where an intervening
decision of the Supreme Court overturns or undermines our earlier
decision. Williams v. Ashland Eng'g Co., 45 F.3d 588, 592 (1st
Cir.), cert. denied, 516 U.S. 807 (1995). Thus, the government is
free to attack Goncalves based on American-Arab even though the
Supreme Court denied certiorari in Goncalves in March 1999, only a
few days after it decided American-Arab. But American-Arab was
concerned with a different issue, and the government's effort to
use American-Arab by analogy is farfetched.
 In American-Arab, a group of aliens brought an action
against the Attorney General seeking to enjoin deportation
proceedings against them; they claimed that they were being
targeted for deportation because of their political views. 
American-Arab, 119 S. Ct. at 936. IIRIRA was passed while their
case was on appeal, and the Attorney General argued that the
injunction sought was prohibited by an IIRIRA provision, effective
at once, see IIRIRA 306(c)(1), that limited judicial intervention
for aliens regardless of when their deportation proceedings began. 
That provision, new INA 242(g) (added by IIRIRA 306(a) and
codified at 8 U.S.C. 1252(g) (Supp. II 1996)) provides:
 Except as provided in this section [providing
 for court of appeals review of final orders]
 and notwithstanding any other provision of
 law, no court shall have jurisdiction to hear
 any cause or claim by or on behalf of any
 alien arising from the decision or action by
 the Attorney General to commence proceedings,
 adjudicate cases, or execute removal orders
 against any alien under this chapter.

 Although this provision might appear to channel judicial
intervention in all deportation matters to the court of appeals,
the Supreme Court concluded that section 242(g) governed only three
specific decisions by the Attorney General, namely, to commence
proceedings, adjudicate cases, and execute removal orders,
American-Arab, 119 S. Ct. at 943. The Court found that the
injunctive action brought by the aliens in American-Arab was a
direct challenge to the Attorney General's decision to "commence
proceedings" and was thus barred by section 242(g). Id. at 945. 
The limited scope of section 242(g), and its aim to protect against
premature review of "discretionary determinations," were
specifically stressed. Id. at 943-44.
 American-Arab thus strengthens Goncalves in one pertinent
respect: by narrowly construing section 242(g), it makes that
provision even less useful to the government as a basis for
restricting the use of habeas to challenge statutory
interpretations adopted in final deportation orders for which
direct review is not available. Other circuits have agreed that
such final orders, including determinations that waivers are barred
by statute, are not decisions "to commence proceedings, adjudicate
cases, or execute removal orders." See Jurado-Gutierrez v. Greene,
Nos. 97-1437, 98-1017, 98-1050, 98-1310, 1999 WL 637038, at *6
(10th Cir. Aug. 19, 1999); Mayers v. INS, 175 F.3d 1289, 1297 (11th
Cir. 1999).
 In a substantive attack on Goncalves allegedly supported
by American-Arab, the government says that section 2241 is not a
general grant of authority to exercise habeas corpus jurisdiction
wherever a person is held "in violation of the Constitution or laws
or treaties of the United States," 28 U.S.C. 2241(c); rather, the
government argues that this quoted language is simply a limitation
on habeas and that there is no affirmative authority to grant
habeas in immigration cases, both because Congress specifically
repealed the grant (which existed in the old INA) and because
Congress intended to curtail habeas in favor of very limited direct
review (as confirmed by new INA section 242).
 The reference in section 2241(c) to "the Constitution or
laws or treaties" is literally a limitation on habeas corpus ("the
writ of habeas corpus shall not extend to a prisoner unless . .
."). But a prior subsection provides that writs of habeas corpus
may be granted by "the district courts . . . within their
respective jurisdictions," 28 U.S.C. 2241(a), and section 2241 as
a whole has long been taken as a general grant of authority to
issue habeas writs for persons held in violation of the
Constitution or laws, unless such jurisdiction has been limited or
withdrawn by Congress. See, e.g., Braden v. 30th Judicial Circuit
Court, 410 U.S. 484 (1973); Norris v. Georgia, 522 F.2d 1006, 1010-
11 (4th Cir. 1975). This is implicit in Goncalves, among other
cases, and nothing in American-Arab is to the contrary.
 Thus, the government's better argument is that section
2241 is a general grant of jurisdiction to issue habeas petitions
but that the new immigration statutes, read together, should be
treated as an implied prohibition on habeas as to deportations in
general because Congress meant to preclude any judicial
intervention where a person is deportable "by reason of" specified
offenses and, with respect to other deportees, meant to channel
judicial review into narrowly circumscribed proceedings in the
courts of appeals subject to specific time limits triggered by
entry of the final order.
 This is by no means a silly argument, although it is
neither compelled by American-Arab nor consistent with Goncalves. 
In LaGuerre v. Reno, 164 F.3d 1035, 1039-40 (7th Cir. 1998),
petition for cert. filed, 68 U.S.L.W. 3154 (U.S. Sept. 7, 1998)
(No. 99-418), Chief Judge Posner has more or less agreed with the
channeling argument. But reluctant, like most judges, to find that
Congress has deprived a "by reason of" deportee of any opportunity
to raise a constitutional issue in court, his opinion proposes to
permit direct review for such challenges where necessary to avoid
a miscarriage of justice. Id. at 1040. This in turn reflects a
narrow concession by the government apparently designed to ward off
a constitutional attack on restricted review.
 Concentrating all judicial scrutiny of deportation in the
courts of appeals is certainly the general direction in which
Congress has been moving. But LaGuerre's solution is at odds with
the explicit statutory bar on any direct review contained in AEDPA
 440(a), see also IIRIRA 309(c)(4)(G), and it leaves no forum at
all for review of statutory claims advanced by anyone deportable
"by reason of" a covered conviction. LaGuerre is also an approach
at odds with that of at least seven other circuits which--before
and after American-Arab--have held that habeas remains available in
transitional rules cases despite the AEDPA amendments or those of
IIRIRA that apply in transition cases.
 We thus conclude that nothing in American-Arab directly
precludes deportees governed by the IIRIRA transitional rules from
challenging their final deportation orders through habeas where
they have no other way to assert in court that their deportation is
contrary to the Constitution or laws of the United States. This
may not be an efficient mechanism, and it is likely the result of
too many congressional amendments not clearly coordinated with one
another. However, until Congress revamps the judicial review
provisions once again, or the Supreme Court provides further
guidance, Goncalves stands, and habeas jurisdiction is available to
both Lemos and Wallace.
 There is one loose end. The government says that even as
narrowed in American-Arab, section 242(g) does apply to Wallace,
although not to Lemos, because Wallace sought not only his release
but also a stay of deportation. This latter request, says the
government, is a direct interference with the Attorney General's
authority to execute removal orders. Of course, the stay issue is
arguably moot, since the district court has granted the writ. But
the government says that a cryptic passage in American-Arab, 119 S.
Ct. at 945, makes the whole "case" subject to section 242(g)
because it included a request for a stay.
 We need not pursue these issues because, where the
district court has authority to grant habeas writs, we are
unwilling to read section 242(g) as depriving the court of
authority to issue traditional ancillary relief needed to protect
its authority to issue the writ. Cf. Pierre v. United States, 525
F.2d 933, 936 (5th Cir. 1976); Saini v. INS, No. CIV 99-0295-PHX-
ROS, 1999 WL 689907, at *6 (D. Ariz. Aug. 24, 1999). To maintain
habeas in the face of section 242(g), but deny the ancillary relief
needed to make it meaningful, would be to strain at the gnat after
swallowing the camel. The Supreme Court's surprisingly narrow
reading of section 242(g), compare Goncalves, 144 F.3d at 122,
certainly does not encourage us to enlarge the reach of that
section.
 The much harder question in this case is whether the ban
on waivers, as that ban was enlarged by AEDPA 440(d), should be
applied to those who, like Wallace and Lemos, were already in
deportation proceedings prior to the enactment of AEDPA but had not
yet sought a section 212(c) waiver. We did not face or decide this
issue in Goncalves, which itself involved a pending waiver
application, but at least three other circuits have found that the
new enlarged ban should not be applied in deportation proceedings
underway at the time that AEDPA became law. (The Seventh Circuit
has reached the opposite conclusion. See LaGuerre, 164 F.3d at
1040-41.
 One difficulty for us is that these three other circuits
rested in part on the premise that Congress did not want the
enlarged ban to apply in pending proceedings. However, there is no
express language in section 440(d) either forbidding or requiring
immediate application of the enlarged ban in pending proceedings. 
These other circuits stressed the fact that Congress considered a
proposal to mandate immediate application but did not enact it; but
at least in the present context, compare Lindh v. Murphy, 521 U.S.
320, 326-30 (1997), we think this is a pretty thin basis for
inferring that it intended the opposite.
 After all, elsewhere in the new statute Congress gave
detailed directions both ways as to immediate or deferred
application of new provisions; in some cases it ordered immediate
application, see, e.g., AEDPA 413(g), 421(b), in others only
prospective application, see, e.g., AEDPA 435(b), 440(e-f),
441(b). Yet in the enlarged ban of waivers it gave no direction
either way. Quite possibly the members of Congress could not
agree; and in such situations, Congress has in the past sometimes
left retroactivity matters to the courts. See, e.g., Landgraf v.
USI Film Prods., 511 U.S. 244, 261 (1994). We think it did so
here, and regard Goncalves as consistent with this determination. 
See Goncalves, 144 F.3d at 128-31 (relying on the lack of express
Congressional direction).
 The Supreme Court has given some guidance for cases like
this one where Congress has not said whether a statute applies to
pending matters or prior transactions. In a nutshell, courts
ordinarily are to presume against "retroactive" (as opposed to
"prospective") application of new civil statutes that make
substantive legal changes (as opposed to jurisdictional or
procedural ones). See Landgraf, 511 U.S. at 270, 280; Hughes
Aircraft Co. v. United States ex rel Schumer, 520 U.S. 939, 946
(1997). But these terms are hardly self-executing, and the Supreme
Court itself has recognized that its classifications might not
resolve all cases. See Martin v. Hadix, 119 S. Ct. 1998, 2006
(1999); Lindh, 521 U.S. at 327-28; Landgraf, 511 U.S. at 270.
 The present case is unusual: Wallace and Lemos were
deportable for their crimes long before AEDPA, whose effect was
simply to limit the Attorney General in exercising her preexisting
discretion to waive deportation. Accord Jurado-Gutierrez, 1999 WL
637038, at *13. To this extent, the amendment might seem not to
impair any existing substantive right belonging to Wallace and
Lemos. On the other hand, the change could certainly have a
direct, and in some measure predictable, impact on their interest
in avoiding deportation.
 One can debate endlessly whether this kind of change
invades a substantive right of the aliens or "increase[s] a party's
liability for past conduct," or "attaches new legal consequences"
to a past act. Landgraf, 511 U.S. at 270, 280; see also Hughes
Aircraft Co., 520 U.S. at 948. The circuits have disagreed about
how these terms should be applied to the enlarged ban, compare
Mayers, 175 F.3d at 1303, with Requena-Rodriguez, 1999 WL 717367,
at *6 (5th Cir. Sept. 15, 1999); and we ourselves have viewed the
issue differently, albeit in two different contexts. Compare
Goncalves, 144 F.3d at 128, with Kolster, 101 F.3d at 789. Such
disagreements are a warning against relying too much on general
labels in deciding unusual cases.
 The concerns that drive the presumptions and labels in
retroactivity cases are multiple. The new law may be more or less
urgent and delay in applying it may or may not undermine Congress's
broader purpose. Concerns about fair warning, reasonable
expectations, and justified reliance vary in force depending on the
nature of the change or even the circumstances of the individual
case. Cf. Martin, 199 S. Ct. at 2006; Lindh, 521 U.S. at 327-28. 
Even prudential matters--such as clarity and ease of
administration--may be of consequence, especially where the new
rule involves the operation of a judicial or administrative
proceeding. And, there may be various places to draw the line.
 Against this background, we think that there are good
reasons, absent a contrary direction from Congress, to apply the
pre-AEDPA scope of waiver to deportation proceedings already in
progress at the time of AEDPA's enactment. However they are
characterized, the waiver rules--once proceedings have begun--
become a common focus of expectation and even reliance. The
alien's choice of strategy in that proceeding may well be affected
by the chances of waiver, so one should be cautious about changing
the rules after the game has begun.
 Congress no doubt was keenly interested in speeding drug
felons out of the country; but it itself considered whether or not
to apply the enlarged ban to "pending cases," thus recognizing a
possible cut off point that involves only a limited and easily
administrable deferral of the new and more stringent regime. 
Goncalves concerned a pending application, not a pending case, but
applications are made within pending cases and it might seem odd to
draw the line between these categories. Finally, consistency
favors a result that is thus far uniform among the circuits, see
note 7, above, except the Seventh Circuit.
 We have assumed thus far that both Wallace and Lemos were
in deportation proceedings before April 24, 1996, the date of
AEDPA's enactment. To the contrary, the government has argued that
Wallace was not in deportation proceedings until after AEDPA's
enactment because, although the INS issued an order to show cause
to Wallace in March 1996, before AEDPA's enactment, that order to
show cause was not filed with the Office of the Immigration Judge
until June 14, 1996, after AEDPA became law. The government points
to INS regulations that provide that a deportation proceeding is
not "commenced" until the order to show cause is filed with the
immigration court. See 8 C.F.R. 3.14(a) (1999).
 In this case we are not concerned with INS's internal
time tables, starting points, due dates, and the like but with the
judicial question of retroactivity. This question turns on
considerations unrelated to the purpose of INS regulations--
primarily (in the absence of statutory guidance) with the evil
Congress sought to prevent and the realities of reasonable reliance
or settled expectations on the part of litigants. From this
standpoint, we think that when an order to show cause is served on
the alien, the deportation process has effectively begun and
expectations properly form, even if there is no actual reliance.
 Our decision leaves open the question whether and when
AEDPA 440(d)'s new ban on waivers applies to cases in which the
alien pled guilty to the crime before AEDPA's enactment date but a
deportation proceeding had not yet begun. In Wallace, the district
court took the view that wherever an alien pled guilty prior to
AEDPA, the alien might have relied on the availability of a waiver,
and so the broadened AEDPA waiver ban should never apply in such a
case. Wallace, 24 F. Supp.2d at 111-12. In another variation, the
Seventh Circuit said that it would not apply AEDPA's enlarged
waiver ban if a deportee showed both that he would not have
conceded deportability without the prospect of a waiver and that he
had some colorable basis for contesting deportability. Turkhan v.
Perryman, No. 98-1964, 1999 WL 615531, at *11 (7th Cir. Aug. 16,
1999).
 It is unnecessary to decide such matters here since both
Lemos and Wallace were in deportation proceedings prior to AEDPA. 
By the time the "guilty plea" case or any other variation has to be
decided, we may have further insight from other circuits, new
guidance from the Supreme Court, or even (given the track record in
recent years) yet another statute from Congress. Finally, our
decision here applies only to cases governed by IIRIRA's
transitional rules; the permanent IIRIRA regime could affect
various of the issues discussed, and we leave those cases for
another day.
 The judgment in Wallace is affirmed, although on a ground
different than that adopted by the district court; and the judgment
in Lemos is vacated and the matter remanded for further proceedings
consistent with this decision.
 It is so ordered.