**Marian MUSTATA; Lenuta Mustata, Petitioners–Appellants,**

v.

**U.S. DEPARTMENT OF JUSTICE; Carol Jenifer, District Director, Immigration and Naturalization Service, Respondents–Appellees.**

No. 97–1977.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 21, 1998.

Decided and Filed June 17, 1999.

---

Robert F. Mirque, Sr. (argued and briefed), Grand Rapids, MI, for Petitioners–Appellants.

Edith A. Landman, Office of the U.S. Attorney for the Western District of Michigan, Grand Rapids, MI, for U.S. Department of Justice.

David M. McConnell (briefed), John J. Andre (argued and briefed), U.S. Department of Justice, Immigration Litigation, Civil Division, Washington, DC, for Carol Jenifer.

Before: KENNEDY and COLE, Circuit Judges; RUSSELL, District Judge.*

## OPINION

KENNEDY, Circuit Judge.

Aliens Marian Mustata and Lenuta Mustata filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 against respondents Department of Justice and Carol Jenifer, the District Director of the Immigration and Naturalization Service. Their petition asserts that ineffective assistance of counsel violated their Fifth Amendment due process and Sixth Amendment rights during their administrative immigration proceedings. The district court held that 8 U.S.C. § 1252(g), which the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009–546 ("IIRIRA"), added to the Immigration and Nationality Act, stripped the court of juris-

* The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

diction to hear the habeas petition. Relying on the recent Supreme Court decision in *Reno v. American–Arab Anti–Discrimination Comm.,* —— U.S. ——, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) (*"AADC"*), we hold that § 1252(g) does not eliminate the district court's jurisdiction over the Mustatas' petition.

## I. Facts and Procedural History

Petitioners Marian and Lenuta Mustata are citizens of Romania. At the time of their petition, they resided in Michigan with their two minor children, who are natural born citizens of the United States. They legally entered the United States in late 1991 and, shortly thereafter, applied to the Immigration and Naturalization Service ("INS") for asylum. A deportation hearing on their asylum claim before an Immigration Judge was eventually scheduled for February 14, 1996. In anticipation of the hearing, the Department of State prepared an advisory opinion concerning the conditions in Romania and the Mustatas' claim of persecution in Romania. The advisory opinion concluded that their claim of human rights abuse was without merit.

At the hearing, the Mustatas were represented by counsel. The Mustatas withdrew their asylum application and agreed to depart voluntarily the United States before November 14, 1996.[1] The Mustatas assert that their counsel at the hearing failed to investigate their grounds for asylum and failed to present evidence supporting their asylum claim. The Immigration Judge ordered that if the Mustatas did not depart voluntarily by November 14, 1996, they would be deported.

Due to financial difficulty that prevented them from securing counsel, the Mustatas assert that they were unable to move to reopen the Immigration Judge's order until shortly before their window of voluntary departure closed. On November 4, 1996, the Mustatas filed an emergency motion to reopen their asylum claim with the Board of Immigration Appeals ("BIA"). On November 15, 1996, the BIA denied the Mustatas' motion to reopen because it was not timely filed in accordance with 8 C.F.R. § 3.2(c)(2).

On November 14, 1996, the day before the BIA denied their motion to reopen and the deadline for voluntary departure before the deportation order took effect, the Mustatas filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the district court. They claimed that ineffective assistance of counsel during their administrative immigration proceedings violated their Fifth Amendment due process and Sixth Amendment rights. The district court held that 8 U.S.C. § 1252(g), enacted by IIRIRA, stripped it of jurisdiction to hear most habeas corpus petitions, including this one, brought pursuant to 28 U.S.C. § 2241 and, for this reason, dismissed the Mustatas' petition. The Mustatas appealed.

## II. Discussion

■ We review dismissals for lack of subject matter jurisdiction de novo. *See Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir.1990). We also review questions of statutory interpretation de novo. *See United States v. Stephens,* 118 F.3d 479, 481 (6th Cir.1997).

■ We conclude that 8 U.S.C. § 1252(g) does not eliminate jurisdiction over the Mustatas' 28 U.S.C. § 2241 habeas petition. After first tracing the statutory provisions that control the effective date and retroactive application of § 1252(g), we interpret the effect of § 1252(g) on the Mustatas' petition in light of *Reno v. American–Arab Anti–Discrimination Comm.,* —— U.S. ——, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) (*"AADC"*).

---

1. In their brief on appeal and in their motion for a stay of proceedings before the district court, the Mustatas assert that the Immigration Judge indicated to their counsel immediately before their asylum hearing that their asylum claim was unlikely to succeed. Because this fact does not appear in their petition or in any other sworn documents, it is not part of the factual record and we do not consider it in our analysis. If we did, it would not affect our analysis or the result we reach.

Congress enacted IIRIRA in 1996.[2] The effective date of most of IIRIRA's changes to the immigration laws is April 1, 1997, *see* IIRIRA, Pub.L. No. 104–208, § 309(a), 110 Stat. 3009–546, 3009–625 (1996), *Richardson v. Reno*, 162 F.3d 1338, 1360 n. 108 (11th Cir.1998), *cert. granted, judgment vacated by* —— U.S. ——, 119 S.Ct. 2016, 143 L.Ed.2d 1029 (1999), and IIRIRA provides that the revised rules generally do not apply to aliens who were already in exclusion or deportation proceedings on IIRIRA's effective date, *see* IIRIRA § 309(c)(1). However, § 306(c)(1) of IIRIRA directs that § 1252(g) "shall apply without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings." § 306(c)(1), 110 Stat. at 3009–612; *see also AADC*, —— U.S. at —— – ——, 119 S.Ct. at 940–41. Although the Mustatas' immigration proceedings commenced and their habeas petition was filed before the effective date of IIRIRA, § 306(c)(1) of IIRIRA mandates retroactive application of § 1252(g) to their petition, at least in the sense that we must examine whether its substance bars their petition. We turn to that question now.

Respondents argue that § 1252(g) strips the district court and this court of jurisdiction over the Mustatas' 28 U.S.C. § 2241 habeas petition. Section 1252(g) provides as follows:

(g) Exclusive jurisdiction

Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

In *AADC*, the Supreme Court interpreted narrowly the three actions listed in § 1252(g) in light of § 1252(g)'s purpose of protecting the Attorney General's discretionary decision to not abandon the alien removal endeavor. *See* 119 S.Ct. at 943–45. The Supreme Court rejected the interpretation that " § 1252(g) covers the universe of deportation claims—that it is a sort of 'zipper' clause that says 'no judicial review in deportation cases unless this section provides judicial review.' " *Id.* at 943. Instead, the Supreme Court explained, "what § 1252(g) says is much narrower. The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.' " *Id.*[3]

---

**2.** Congress also modified judicial review of immigration decisions earlier in 1996 with the Anti–Terrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA"). No judicial review provisions from AEDPA are at issue here. Most AEDPA judicial review provisions, and some IIRIRA judicial review provisions not applicable here, apply to aliens who are being deported for having committed certain crimes. *See, e.g., Goncalves v. Reno*, 144 F.3d 110 (1st Cir.1998) (describing and analyzing AEDPA and IIRIRA changes to judicial review of immigration proceedings that affect aliens being deported for having committed crimes), *cert. denied*, —— U.S. ——, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999).

**3.** The Supreme Court interpreted § 1252(g) in this way after first describing the conflict between statutory provisions that results from a broad reading of § 1252(g). Because the Supreme Court has resolved this interpretive dilemma with its narrow reading of § 1252(g), we only summarize the provisions that created this dilemma here. If § 1252(g) applied to all deportation claims, a conflict would exist between:

(1) IIRIRA § 309(c)(1), which provides that generally § 1252 does not apply to aliens who were already in exclusion or deportation proceedings on IIRIRA's effective date [below "transitional proceedings" refers to aliens already in such proceedings on the effective date];

(2) IIRIRA § 306(c)(1), which provides that § 1252(g) applies "without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings;" and

(3) § 1252(g), which provides that "[e]xcept as provided in this section...."

Read in tandem, §§ 306(c)(1) and 309(c)(1) direct that only § 1252(g) is to apply to aliens

To make it clear that § 1252(g) is to apply narrowly, the *AADC* Court listed examples of other decision or actions that occur during the deportation process to which § 1252(g) does not apply. These examples are "the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order." *Id.* Because some of the examples could be squeezed into one of the three listed actions if the actions were to be read expansively, the examples reinforce the Court's express statement that § 1252(g) "applies only to three discrete actions" and its description of its reading of § 1252(g) as a "narrow" one. *Id.* at 943, 945.

The Court's description of § 1252(g)'s purpose and why Congress would focus on these three actions also guides us in determining the reach and meaning of the three actions listed in § 1252(g)'s text. The Supreme Court explained that "[t]here was good reason for Congress to focus special attention upon" these three acts because "[a]t each stage the Executive has discretion to abandon the endeavor, and at the time IIRIRA was enacted the INS had been engaging in a regular practice (which had come to be known as

'deferred action') of exercising that discretion for humanitarian reasons or simply for its own convenience." *Id.* at 943. Because "no generous act goes unpunished," aliens had started to bring cases challenging the INS's decision not to exercise its discretion to allow aliens to stay in this country. *See id.* at 944. According to the Court, "[s]ection 1252(g) seems clearly designed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations, providing that if they are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed." *Id.* "Section 1252(g) was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *Id.* at 944 n. 9.

■ With this understanding of § 1252(g), we turn to the Mustatas' claim. The Mustatas' petition for habeas corpus states that they are in "custody" [4] in violation of the Fifth and Sixth Amendments because "they were denied due process . . . and did not receive effective assistance of counsel." To support their claim, they allege a number of facts, only three of which appear at all relevant to their due process and ineffective assistance of counsel claim: (1) "counsel for the petitioner, in

---

in transitional proceedings, but § 1252(g) seems to incorporate the rest of § 1252 in its first words "[e]xcept as provided in this section." So the Court was faced with the problem of §§ 306(c)(1) and 309(c)(1) together directing that the rest of § 1252 does not apply while § 1252(g) states that the rest of § 1252 does apply. *See AADC*, —— U.S. at ——–––––, 119 S.Ct. at 940–42 (describing "this dilemma" more fully); *see also Haddam v. Reno*, —— F.Supp.2d ——, No. Civ. A. 98–1579–A, 1999 WL 258420, at *4 (E.D.Va. Apr. 28, 1999) ("The Supreme Court's method of cutting the Gordian knot [resulting from the conflicting provisions] requires a strictly literal reading of the language of § 1252(g).")

4. It does not appear that the Mustatas were literally in custody at any point. In their petition, they state that they reside with their children at a street address in Michigan. The Mustatas appear to be saying that the final

deportation order against them places them constructively "in custody," given the specialized meaning those words have in the context of an immigration-related habeas petition. *See, e.g., Then v. INS*, 37 F.Supp.2d 346, 354 n. 8 (D.N.J.1998) (stating that the "in custody" requirement of 28 U.S.C. § 2241 is fulfilled where the alien is "subject to a final order of deportation but not yet deported"); *cf. Nakaranurack v. United States*, 68 F.3d 290, 293 (9th Cir.1995) (holding that the "in custody" requirement of the since-repealed INA habeas provision previously found at 8 U.S.C. § 1105a(a)(10) is satisfied in "situations in which an alien is not suffering any actual physical detention; i.e., so long as he is subject to a final order of deportation"). Because the Mustatas' period of voluntary departure expired on the day they filed their habeas petition, at that time they faced a final order of deportation, placing them constructively "in custody" under 28 U.S.C. § 2241.

his preparation for the deportation hearing on February 14, 1996, failed to properly investigate sources of authoritative evidence to properly address the petitioners' grounds for asylum," (2) "[c]ounsel failed to present testimony that was readily available for the deportation hearing as well as documentary evidence [that would have rebutted the advisory opinion recommending the denial of their asylum request]," and (3) from their February 14, 1996 hearing until late October 1996, they were financially unable to retain counsel to pursue administrative or judicial appellate remedies.[5] In their prayers for relief, the Mustatas requested the district court grant their petition and require the INS District Director to "produce before your Honor immediately the bodies of your petitioners, together with the alleged grounds of said order of deportation, that the legality and propriety of the deportation may be inquired into according to law." The Mustatas also requested that the district court issue an order staying their deportation pending a ruling on their motion to reopen before the Immigration Judge and, if necessary, pending an appeal to the Circuit Court of Appeals.

■ We hold that the Mustatas' habeas petition does not fall within any of the three Attorney General decisions or actions covered by § 1252(g). In essence, the Mustatas' petition makes a claim that their counsel's ineffective performance at their hearing resulted in a deportation order entered against them without due process.[6] The Mustatas' challenge is not one to the decision or action to "commence proceedings" in their case. In *AADC*, the plaintiffs-aliens claimed that the Attorney General initiated deportation proceedings against them because of their political beliefs and this selective enforcement of immigration law violated their First Amendment rights. *See id.* at 938–39. They filed suit and requested an injunction "[a]lmost immediately" after the INS instituted deportation proceedings. *See id.* at 939. The Court concluded that their challenge was one to the Attorney General's decision to "commence proceedings." *See id.* at 945. The Mustatas' challenge is not at all similar. Their claim did not develop when the Attorney General commenced proceedings, it developed after the allegedly constitutionally deficient performance of their counsel at the deportation hearing.

We also find the petition is not a challenge to a decision or action to "adjudicate cases." While the claim arises out of the February 1996 hearing at which they agreed to drop their asylum claim in exchange for voluntary departure, the Mustatas are not challenging the Attorney General's decision to adjudicate their case. They are not claiming that the Attorney General should have exercised her discretion to not adjudicate their case and grant them "deferred action."

Finally, we conclude that their claim is not one to the Attorney General's decision or action to "execute [a] removal order." The facts relevant to their claim—essentially that their counsel failed to investigate and present relevant evidence—took place well before any decision by the Attorney General to execute a removal order. Moreover, the Mustatas are not claiming that the Attorney General should grant them discretionary, deferred-action-type relief. That is, they are not asking the Attorney General to exercise her discre-

---

5. The other facts alleged concern their efforts in the three weeks leading up to the filing of their habeas petition to convince immigration officials to reopen their deportation proceedings and the lack of response from those officials. It appears that the Mustatas alleged these facts in an effort to establish that they had "exhausted all administrative remedies" rather than as support for their constitutional claim.

6. The Mustatas also point to the Sixth Amendment as a basis for their claim. Although we do not reach the merits of their petition for the reasons that we state later, we only refer to the due process aspect of their claim here because it is clear that the Sixth Amendment does not apply to civil deportation proceedings. *See Lozada v. INS*, 857 F.2d 10, 13 (1st Cir.1988) (holding that the Sixth Amendment does not apply to deportation proceedings because they are considered civil in nature).

tion to allow them to remain in the United States. The fact that the Mustatas in their petition seek a stay of deportation does not make their claim one against the decision to execute a removal order. The substance of their claim is that their counsel's failure to investigate and present relevant evidence resulted in a violation of their due process rights. Whether or not the Attorney General executes a removal order against the Mustatas is immaterial to the substance of this claim. Respondents' argument to the contrary confuses the substance of the Mustatas' claim with the remedy requested.

Because the Mustatas' claim does not fall within the three discrete actions listed in § 1252(g), § 1252(g) does not bar jurisdiction over the Mustatas' petition. Therefore, we need not reach the issue of whether § 1252(g), in cases involving claims falling under one of the three listed actions or decision, strips the district court of 28 U.S.C. § 2241 habeas jurisdiction.[7]

For the reasons stated above, we hold that § 1252(g) does not strip the district court of jurisdiction over the Mustatas' habeas petition. We remand to the district court to assess the merits of their petition. Our discussion of the Mustatas' claims should not give the impression that we are in any way holding that they are entitled to relief on those claims. Rather, we have reviewed those claims solely to assess whether § 1252(g) eliminates jurisdiction over them. The merits of their claims are not before us because respondents based their motion to dismiss in the district court solely on the issue of jurisdiction and the parties have not argued the merits before the district court or us on appeal.[8]

## III. Conclusion

For the foregoing reasons, we vacate the district court's opinion dismissing the habeas corpus petition for lack of jurisdiction and remand for further proceedings consistent with this opinion.

---

7.  *AADC* also did not address the habeas issue. *See* —— U.S. at —— n. 7, 119 S.Ct. at 942 n. 7. The courts that addressed it prior to the *AADC* decision reached conflicting results. *Compare, e.g., Sandoval v. Reno*, 166 F.3d 225, 236–38 (3d Cir.1999) (holding that § 1252(g) does not repeal 28 U.S.C. § 2241 habeas jurisdiction); *Goncalves v. Reno*, 144 F.3d 110, 122 (1st Cir.1998) (same), *cert. denied*, —— U.S. ——, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999); *Henderson v. INS*, 157 F.3d 106, 117–22 (2d Cir.1998) (same), *cert. denied*, —— U.S. ——, 119 S.Ct. 1141, 143 L.Ed.2d 209 (1999); with *Richardson v. Reno*, 162 F.3d 1338, 1356–60 (11th Cir.1998) (holding that § 1252(g) eliminates 28 U.S.C. § 2241 habeas jurisdiction, also collecting cases), *cert. granted, judgment vacated by*, —— U.S. ——, 119 S.Ct. 2016, 143 L.Ed.2d 1029 (1999); *LaGuerre v. Reno*, 164 F.3d 1035, 1038–41 (7th Cir.1998) (stating that the 1996 Amendments preclude habeas jurisdiction in those cases to which they apply). Since the *AADC* decision the three circuits that have revisited the habeas issue have not resolved this conflict. The Third Circuit affirmed its holding in *Sandoval* that the 1996 Amendments did not limit habeas review of deportation orders, *see Catney v.*

*INS*, 178 F.3d 190, 191–92 (3d Cir.1999), while the Seventh Circuit affirmed its prior case law stating that the 1996 Amendments eliminated habeas jurisdiction, *see Singh v. Reno*, 182 F.3d 504, 508–09 (7th Cir.1999). The Eleventh Circuit, however, has limited its holding in *Richardson* and found habeas jurisdiction to exist when the transitional rules of IIRIRA apply. *See Mayers v. INS*, 175 F.3d 1289 (11th Cir.1999). Now that the Supreme Court has clarified that § 1252(g) has a narrower impact, this issue is likely to arise in fewer cases.

8.  In a cryptic footnote at the end of its opinion holding that it lacked jurisdiction over the Mustatas' petition, the district court stated that if it had "habeas jurisdiction under § 2241, it would find that the petition fails for the reasons stated in the [Magistrate Judge's] Report and Recommendation." However, the Report and Recommendation only addresses the jurisdiction issue. To be fair to the parties, we remand to the district court rather than reach the merits of the petition on appeal.