**Mark Alexander ZHISLIN, Petitioner–Appellant,**

**v.**

**Janet RENO, Attorney General, et al., Respondents–Appellees.**

No.  97–5957.

United States Court of Appeals, Sixth Circuit.

Argued:  July 28, 1998.

Decided and Filed:  Nov. 4, 1999.

Charles J. Eades (argued and briefed), Franklin, Tennessee, for Petitioner–Appellant.

Keisha Dawn Bell (argued and briefed), David M. McConnell (briefed), U.S. Department of Justice, Immigration Litigation, Civil Division, Washington, D.C., for Respondents–Appellees.

Before: NELSON, BOGGS, and CLAY, Circuit Judges.

## OPINION

DAVID A. NELSON, Circuit Judge.

A man without a country, if not precisely a modern-day Philip Nolan, the petitioner in this habeas case is under detention by the Immigration and Naturalization Service because of the inability of INS to identify a country to which he can be deported.

The petitioner is subject to a final deportation order entered against him as a stateless criminal. He does not contest his deportability. It has not been feasible to deport him, however, because no one has been able to find a country that will take him. Invoking 28 U.S.C. § 2241, therefore, the petitioner brought a suit (against the Attorney General, the Commissioner of the INS, and others) in which he asserts a right to release from detention on constitutional grounds.

The district court concluded that its jurisdiction to adjudicate the petitioner's claims did not survive the enactment of 8 U.S.C. § 1252(g), a jurisdiction-limiting provision added to the code by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. 104–208, Div. C., (Sept. 30, 1996). The petitioner's suit was dismissed for want of jurisdiction on the strength of § 1252(g).

At the time it decided the jurisdictional question, the district court did not have the benefit of either the Supreme Court's opinion in *Reno v. American–Arab Anti-Discrimination Comm.*, 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999), or our subsequent application of Reno in *Mustata v. United States Dept. of Justice*, 179 F.3d 1017 (6th Cir.1999). These opinions now make it clear that the scope of § 1252(g) is much narrower than the district court— and the petitioner himself—thought it was. Giving § 1252(g) the narrow interpretation mandated by *Reno*, we are satisfied that the section did not deprive the district court of jurisdiction to adjudicate Mr. Zhislin's claims. Accordingly, we shall reverse the dismissal order and remand the case for further proceedings in the district court.

I

The petitioner, Mark Alexander Zhislin, was born in Kharkov, Ukraine, at a time when Ukraine was still part of the Soviet Union. He and his family fled the religious persecution to which they were subject in the Soviet Union, and in 1979, at the age of 17, Mr. Zhislin made a lawful entry into the United States. He received permanent alien status in 1981, and he now has a wife and son who are United States citizens. Mr. Zhislin lived and worked in Nashville, Tennessee, prior to his detention.

The facts leading to his detention are these: In 1983 and 1985, Mr. Zhislin was convicted in a Florida state court on various drug charges. In 1988 the INS issued a show cause order alleging that the convictions rendered him subject to deportation. He conceded as much, and he sought a discretionary waiver of deportation. Such a waiver was granted by an immigration judge in January of 1989.

In 1990, after his receipt of the waiver of deportation, Mr. Zhislin was caught engaging in the interstate transportation of a large quantity of marijuana. He pleaded guilty to having violated the Travel Act, 18 U.S.C. § 1952, and was sentenced to imprisonment in a federal correctional institution for a term of five years. The INS subsequently issued another show cause order, alleging that Mr. Zhislin was deportable under then-current § 241(a)(11) of the Immigration and Naturalization Act (relating to controlled substance offenses) and § 241(a)(4)(B) (relating to aggravated felonies).

In August of 1995, after Mr. Zhislin's release from federal prison, an immigration judge denied a request for a second waiver of deportation and ordered Zhislin deported to either Israel or Ukraine. An appeal from this order was dismissed by the Board of Immigration Appeals in March of 1996. Judicial review of the BIA decision was then sought in this court. On May 15, 1996, Mr. Zhislin complied with an INS self-surrender order. He has been detained by the INS ever since.

Mr. Zhislin had requested that he be released on bond pending judicial review of the BIA decision. He subsequently decided not to contest the deportation order, however, and his petition for review of the BIA decision was voluntarily dismissed on September 24, 1996. Two days later, apparently unaware of the dismissal, a district director of the INS denied the request for release on bond pending judicial review. The director found (a) that Mr. Zhislin's status as an alien subject to a final order of deportation rendered him a flight risk, and (b) that his drug crimes made him a threat to society.

On October 11, 1996, Mr. Zhislin was informed that Ukraine had refused him entry. (He had learned several months earlier that Israel declined to admit him.) The INS then agreed to try to deport Mr. Zhislin to the Dominican Republic pursuant to a tourist visa he had obtained from that country. He was flown there on October 22, 1996, but the Dominican Republic refused him entry. He was returned to the United States soon thereafter.

The 10–day period for an appeal to the BIA from the District Director's denial of the motion for release pending judicial review expired during the time that Mr. Zhislin thought he was going to be deported to the Dominican Republic. It is doubtful whether the BIA could have granted relief in any event, however, because Mr. Zhislin had already dismissed his request for judicial review.

Mr. Zhislin filed his habeas petition after his return from the Dominican Republic. In the petition he asserts that his detention is in violation of the Fifth Amendment guarantee of due process and the Eighth Amendment prohibition against excessive bail. Factually, the crux of Mr. Zhislin's claims lies in the assertion that there is little or no likelihood that the INS will ever be able to deport him. Mr. Zhislin says that although he has actively sought visas from 34 countries, none of these countries will have him.

In response to Mr. Zhislin's habeas petition, the respondents filed an answer asserting lack of jurisdiction in the district court. In this connection the respondents called the court's attention to a portion of 8 U.S.C. § 1252(g) that provides, subject to certain exceptions, that

> "... notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to ... execute removal orders against any alien under this chapter."

Persuaded that "[t]he plaintiff's claim to freedom pending his deportation is clearly a claim arising from the execution of a removal order," and further persuaded that "Congress has made § 1252(g) applicable without limitation to claims arising from past, pending or future exclusion, deportation or removal proceedings," the district court entered an order dismissing

## II

■ In his appellate brief, which was filed prior to the Supreme Court's issuance of its decision in *Reno v. American–Arab Anti–Discrimination Comm.*, 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999), Mr. Zhislin does not challenge the proposition that his claim to freedom arises from an action taken by the Attorney General to "execute [a] removal order[ ]" within the meaning of those words as used in 8 U.S.C. § 1252(g).[1] He argues instead that § 1252(g) is inapplicable to him because of a savings provision found in § 309(c) of the 1996 Act. In any event, he goes on to argue, "some avenue of judicial review is constitutionally required for colorable claims of unlawful detention."

Mr. Zhislin's first argument is squarely defeated by the Supreme Court's decision in *Reno*. See 525 U.S. at ——– ——, 119 S.Ct. at 940–41. The same decision, however, makes it unnecessary for us to pass judgment on Mr. Zhislin's fall-back argument—for in addition to holding the savings provision inapplicable, *Reno* gave § 1252(g) a "narrow reading"—the Supreme Court's words, not ours—that is clearly dispositive of the present appeal.

Subject to exceptions not relevant here, § 1252(g) deprives the courts of jurisdiction to hear any alien's claim that arises from a decision ("or action") by the Attorney General to do any of the following:

— (1) To "commence proceedings,"

— (2) To "adjudicate cases," or

— (3) To "execute removal orders against any alien ...."[2]

Under one possible reading of this provision, § 1252(g) "covers the universe of deportation claims...." Under this reading, in other words, § 1252(g) "is a sort of 'zipper' clause that says 'no judicial review in deportation cases unless this section provides judicial review.'" *Reno*, 525 U.S. at ——, 119 S.Ct. at 943. The "zipper clause" reading appears to have been the one adopted by the district court.

■ We now have it on the highest authority, however, that "what § 1252(g) says is much narrower." *Id. Reno* explains that the provision applies only to "three discrete actions that the Attorney General may take"—the three actions we have highlighted above—leaving "many other decisions or actions that may be part of the deportation process,"[3] but claims arising from which are still subject to the jurisdiction of the federal courts. "It is implausible," the *Reno* Court concluded, "that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id.*

■ Among the claims not barred by § 1252(g) even though they arise from deportation proceedings, as our court held in the post-*Reno* case of *Mustata v. U.S. Dept. of Justice*, 179 F.3d 1017 (6th Cir. 1999), are claims of ineffective assistance of counsel at the administrative level. The habeas petitioners in *Mustata* asserted that the ineffective performance of their counsel at the time of their administrative

---

**1.** "[W]hen the failure to do so would constitute a miscarriage of justice," we may decide issues not raised by the parties. *Dorris v. Absher*, 179 F.3d 420, 425 (6th Cir.1999). Our failure to do so here might well result in a miscarriage of justice.

**2.** In full text, § 1252(g) reads as follows:

"Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien

arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."

**3.** Illustrations offered by the court are "decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order." *Id.*

hearing resulted in a deportation order being entered against them without due process of law. *Id.* at 1022. Stressing that the *Mustata* petitioners were not asking the Attorney General to exercise her discretion to allow them to remain in the United States, whereas § 1252(g) was directed against "attempts to impose judicial restraints upon prosecutorial discretion," *id.* at 1021 (quoting *Reno*, 525 U.S. at —— n. 9, 119 S.Ct. at 944 n. 9), we held that the claims of the petitioners in *Mustata* did not arise from the execution of a removal order as such. What the claim arose from, rather, was alleged breaches of professional responsibility that "took place well before any decision by the Attorney General to execute a removal order." *Mustata*, 179 F.3d at 1022.

 If the habeas claim asserted in *Mustata* did not arise from the Attorney General's "decision or action … to … execute removal orders," it follows *a fortiori* that the habeas claims asserted in the case at bar did not arise from any such decision or action. The *Mustata* petitioners, after all, were challenging the constitutionality of the deportation order itself. Mr. Zhislin, by contrast, challenges neither the constitutionality of the deportation order nor the right of the Attorney General to execute the order. All that Mr. Zhislin is challenging is the right of the Attorney General to detain him indefinitely when it appears that circumstances beyond anyone's control will prevent the deportation order from ever being executed. Under the logic of *Reno* and *Mustata*, and bearing in mind that there is no challenge here to the Justice Department's discretion to prosecute, we are satisfied that Mr. Zhislin has not presented a challenge "arising from the decision or action by the Attorney General to execute removal orders. . . ." Section 1252(g) did not deprive the district court of jurisdiction to hear Mr. Zhislin's cause.

The dismissal order is **REVERSED**, and the case is **REMANDED** to the district court for further proceedings not inconsistent with this opinion.