**DETROIT FREE PRESS,**
**et al., Plaintiffs,**

v.

**John ASHCROFT, et al., Defendants.**

**Rabih Haddad Plaintiff,**

v.

**John Ashcroft, et al. Defendants.**

**Nos. 02–70339, 02–70340, 02–70605.**

United States District Court,
E.D. Michigan,
Southern Division.

April 3, 2002.

Herschel P. Fink, Brian D. Wassom, Honigman, Miller, Detroit, MI, for Detroit Free Press, Inc., plaintiff.

Jonathan D. Rowe, Soble & Rowe, Ann Arbor, MI, for Herald Co., plaintiff.

L. Michael Wicks, U.S. Attorney's Office, Detroit, MI, Thankful L. Vanderstar, U.S. Dept. of Justice, Office of Immigration Lit., Washington, DC, for defendants.

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS COMPLAINTS FOR LACK OF JURISDICTION [14–1] [1]

EDMUNDS, District Judge.

These cases arise from the Government's institution of removal proceedings

---

1. The parties have filed numerous pleadings in this matter. For ease, they will be referenced as follows: (1) Haddad's motion for preliminary injunctive relief ("Haddad's Motion"); (2) Detroit Free Press Plaintiffs' motion for injunctive relief ("Free Press' Motion"); (3) Detroit News Plaintiffs' motion for injunctive and declarative relief ("Detroit News' Motion"); (4) Government's response to the Detroit Free Press Plaintiffs' and Detroit News Plaintiffs' motions and motion to dismiss complaint for failure to state a claim upon which relief can be granted ("Government's 12(b)(6) Motion as to the Newspaper Plaintiffs"); (5) Government's response to Haddad's motion and motion to dismiss complaint for failure to state a claim upon which relief can be granted ("Government's 12(b)(6) Motion as to Haddad"); (6) Government's motion to dismiss complaint for lack of jurisdiction ("Government's 12(b)(1) Motion"); (7) Detroit News Plaintiffs' response to Government's 12(b)(1) motion and reply to Government's response and 12(b)(6) motion ("Detroit News' Reply"); (8) Detroit Free Press Plaintiffs' reply to Government's response and 12(b)(6) motion and response to Government's 12(b)(1) motion ("Free Press' Reply"); (9) Haddad's reply brief in support of motion for preliminary injunction and response to government's Rule 12(b)(1) and (6) motions ("Haddad's Reply"); and finally, (10) Government's reply brief in support of 12(b)(6) motion in reply to Free Press' and Detroit News' replies ("Government's SurReply").

against a number of non-citizens, primarily young men of Arab and Muslim background, following the horrific events of September 11, 2001, and the Government's decision to close those proceedings to the press and public. Arguing that the closure of the hearings is unconstitutional, plaintiffs filed three separate lawsuits seeking an injunction against such procedure in any future hearings. Now before the Court are the Government's challenge to the Court's jurisdiction to address plaintiffs' claims, and its request that the cases therefore be dismissed.

The Government contends that the United States District Court lacks jurisdiction pursuant to the judicial review provisions of the Immigration and Nationality Act ("INA"), as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA").[2] *See* INA § 242, 8 U.S.C. § 1252 (2000). The Government interprets the INA as affording judicial review *only* in the court of appeals and *only* after a final order of removal has been issued. The Government focuses its argument on three provisions within the INA: §§ 242(b)(9), (d)(1), and (g), 8 U.S.C. §§ 1252(b)(9), (d)(1) and (g).[3] The Court also finds relevant to this issue INA § 242(a)(2)(B)(ii), 8 U.S.C. § 1252(a)(2)(B)(ii).[4]

For the reasons stated below, the Court finds that it has jurisdiction to hear these cases and therefore denies the Government's motion to dismiss the complaints for lack of jurisdiction.

## I.  The Parties

Members of the press and public filed two of the cases challenging the Government's closure of removal proceedings. The plaintiffs in those cases are (1) the Detroit Free Press, Inc. and Herald Co., Inc. (d/b/a the Ann Arbor News)(the "Free Press Plaintiffs") and (2) the Detroit News, Inc., Congressman John Conyers, Jr., and Metro Times, Inc. (the "Detroit News Plaintiffs")(collectively the "Newspaper Plaintiffs"). The third case was filed by Rabih Haddad ("Haddad"), one of the men against whom the Government has instituted removal proceedings.[5] The defendants in all of the cases are Attorney General John Ashcroft, Chief Immigration Judge Michael Creppy, and Immigration Judge Elizabeth Hacker (collectively "the Government").

## II.  Factual Background

Haddad, a native of Lebanon, resided in Ann Arbor, Michigan off-and-on since 1988. *See* Haddad's Mot. ¶ 4. Haddad and his family most recently came to the United States in 1998 on six-month tourist visas. *See id.* Ex. A ¶ 3. On December 14, 2001, the United States Immigration and Naturalization Service ("INS") took Haddad into custody for overstaying his visa and initiated removal proceedings in Detroit before Immigration Judge Elizabeth Hacker. *See id.* ¶¶ 5 & 7.

On September 21, 2001, prior to Haddad's arrest, Chief Immigration Judge Michael Creppy issued a directive to all United States Immigration Judges mandating

---

2.  *See* IIRIRA, Publ. L. No. 104–208, 110 Stat. 3009 (1996).

3.  The Government's argument with respect to subsection (d)(1) is contained at pages 5–9 of its 12(b)(6) Motion as to Haddad.

4.  The Government in fact also relies on subsection (a)(2)(B)(ii), however, it relegated its discussion of this subsection to a footnote. *See* Government's 12(b)(1) Motion at 10 n. 11.

5.  The Court issued an Order on March 5, 2002, consolidating the Newspaper Plaintiffs' lawsuits. In the same Order, the Court consolidated Haddad's and the Newspaper Plaintiffs' cases for pretrial matters.

that they close immigration proceedings to the press and public (including family members of the deportee) in certain "special interest" cases identified by the Office of the Chief Immigration Judge ("the Creppy directive"). *See* Haddad's Mot. ¶ 6. Chief Immigration Judge Creppy issued this directive under United States Attorney General John Ashcroft's authorization. *See id.* ¶ 8.

On December 19, 2002, Immigration Judge Hacker conducted a bond hearing in Haddad's case. *See* Haddad's Mot. ¶ 16. Haddad's family, members of the public, and the Newspaper Plaintiffs sought to attend the hearing. *See id.* However shortly before the hearing began, and without prior notice to Haddad or his counsel, courtroom security officers announced that the hearing was closed to the press and public. *See id.* Haddad objected to the closure of his hearing. *See id.* ¶ 18. Immigration Judge Hacker stated that the decision to close the proceedings came from her supervisors and that she lacked the power to reverse the decision. *See id.* Following the December 19 hearing, Judge Hacker denied bail and ordered Haddad detained. *See id.* ¶ 22. Subsequent hearings, conducted on January 2 and 10, 2002, also were closed to the press and public. *See* Free Press' Mot. at 4 ¶¶ 10 & 11. Haddad remains in detention and has been transferred to Chicago for additional proceedings. *See* Haddad Mot. ¶¶ 29 & 31. The next hearing in his case is scheduled for April 10, 2002.

In response to the Government's closure of removal hearings, Haddad and the Newspaper Plaintiffs filed their complaints for injunctive and declaratory relief. Haddad claims that the Government's actions violate his rights under (1) the Administrative Procedures Act ("APA"), 5 U.S.C. § 551 *et seq.;* (2) the INA, and the regulations promulgated thereunder, 8 C.F.R. §§ 3.27 & 240.10; and (3) the Due Process Clause of the Fifth Amendment of the United States Constitution. The Newspaper Plaintiffs claim that they have a right of access to such hearings pursuant to the First Amendment of the United States Constitution, as well as statutory and regulatory law.

## III. Applicable Law

In 1996 Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), thereby amending the INA. *See* IIRIRA, Pub.L. No. 104–208, 110 Stat. 3009 (1996). The issue before this Court is whether the judicial review provisions of the amended INA stripped the district courts of jurisdiction to hear constitutional challenges to the procedures afforded in removal proceedings. *See* 8 U.S.C. § 1252.

### A. INA § 242(d)(1), 8 U.S.C. § 1252(d)(1)

The INA contains a provision addressing judicial review of orders of removal. *See* 8 U.S.C. § 1252. Within that provision, Congress has provided that "[a] court may review a final order of removal only if (1) the alien has exhausted all administrative remedies available to the alien as of right ..." 8 U.S.C. § 1252(d)(1). The Government interprets this provision as prohibiting "interlocutory" judicial review of procedural challenges to a removal hearing, even those of a constitutional dimension. *See* Govt's 12(b)(6) Mot. as to Haddad at 5–6.

The Government relies on a number of cases to argue that subsection (d)(1) requires administrative exhaustion of Haddad's and the Newspaper Plaintiffs' constitutional challenges. *See, e.g., Liu v. Waters,* 55 F.3d 421, 426 (9th Cir.1995); *Sayaxing v. INS,* 179 F.3d 515, 522–23 (7th Cir.1999); *Mojsilovic v. INS,* 156 F.3d 743, 748 (7th Cir.1998). These cases indicate that when determining whether the INA's review provisions require ex-

haustion in a particular case, the primary issue is whether the challenged errors are correctable by the Board of Immigration Appeals ("BIA").[6] As the Court of Appeals for the Ninth Circuit stated in *Liu:*

> If the exhaustion requirement is to serve its purpose, we must not allow the exception for constitutional question to swallow the rule. The key is to distinguish the procedural errors, constitutional or otherwise, that are correctable by the administrative tribunal from those that lie outside the BIA's ken. On the one hand, we will not hear claims that have not been presented to the BIA simply because they have been labeled constitutional questions; on the other hand, we will not require a petitioner to engage in the futile exercise of making a motion to reopen when the BIA lacks the jurisdiction to entertain the claim.

*Liu,* 55 F.3d at 426. Courts generally do not require exhaustion where administrative review would be futile. *See, e.g., McCarthy v. Madigan,* 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992).

■ The BIA lacks the power to correct the problems plaintiffs raise here, as the directive to close Haddad's hearings came from the highest level of the INS and were authorized by the Attorney General. *See* Govt's 12(b)(6) Mot. as to Haddad Ex. A.[7] Thus, it would be futile to require exhaustion pursuant to subsection (d)(1).[8] Two additional arguments dictate against requiring exhaustion.

First, courts in several circuits have drawn a distinction between jurisdiction to rule on the merits of an individual deportation order, including challenges which "may provide a basis for reversing an individual deportation order" and jurisdiction to rule on an alleged pattern and practice of constitutional or statutory violations. *El Rescate Legal Servs. Inc. v. Exec. Office of Immigration Review,* 959 F.2d 742, 746 (9th Cir.1991)(quoting *Haitian Refugee Ctr. v. Smith,* 676 F.2d 1023, 1033 (5th Cir.1982)(*overruled on other grounds*)); *see also Salehi v. Dist. Dir., INS,* 796 F.2d 1286, 1290 (10th Cir.1986); *Jean v. Nelson,* 727 F.2d 957, 979–80 (11th Cir.1984)(*aff'd,* 472 U.S. 846, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985)). In those cases, the courts held that the statutory exhaustion requirements do not apply to the second category of claims. Second, the INA does not provide a mechanism for the Newspaper Plaintiffs to intervene in Haddad's deportation proceeding in order to challenge the closure order, as they assert no interest in the outcome of the hearing. Therefore the

6. The issue in these cases, however, was not whether the district courts had subject matter jurisdiction to hear the aliens' challenges. Rather, the issue was whether the court of appeals had jurisdiction to hear procedural challenges, constitutional or otherwise, which had not been raised before the Board of Immigration Appeals ("BIA"). *See Liu,* 55 F.3d at 424 (holding that court of appeals lacked jurisdiction to decide ineffective assistance of counsel claim raised for the first time in that court); *Mojsilovic,* 156 F.3d at 748 (same); *Sayaxing,* 179 F.3d at 522 (finding no jurisdiction where alien failed to raise claim that deportation hearing was unfair in appeal to BIA).

7. This exhibit is the Creppy directive in which Chief Immigration Judge Creppy states:

As some of you already know, the Attorney General has implemented additional security procedures for certain cases in the Immigration Court. Those procedures require us to hold hearings individually, to close the hearing to the public, and to avoid discussing the case or otherwise disclosing any information about the case to anyone outside the Immigration Court.

8. Prudential exhaustion concerns also do not apply here. First, further development of the record is not necessary to address plaintiffs' challenges to the Creppy directive. Second, the INS is not likely to take action that would preclude the need for judicial review (and in fact appears to lack the power to do so without the Attorney General's approval).

Newspaper Plaintiffs have no administrative remedy to exhaust. *See Pechter v. Lyons,* 441 F.Supp. 115, 119 (S.D.N.Y.1977)(holding that members of the public had no administrative remedy to challenge closure of deportation hearing because they lacked interest in outcome of the hearing).

## B.  INA § 242(g), 8 U.S.C. § 1252(g)

Within the INA's judicial review provision, Congress restricted judicial review of "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate case, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). The Government argues that the claims presented in this matter are challenges to the "adjudication" of Haddad's removal case and therefore fall within subsection (g). The Government states: "plaintiffs' claim here that the closure policy is unconstitutional arises from a decision to adjudicate Haddad's case under the INA." *See* Govt's 12(b)(1) Mot. at 8. The Government relies on the Supreme Court's decision in *Reno v. American–Arab Anti–Discrimination Committee,* 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999)("*AADC*"), to support its position. However, the Supreme Court's holding in *AADC* specifically rejects the broad interpretation of subsection (g) that the Government now advocates (and which in fact was argued by the parties in that case).

*AADC* arose from resident aliens' complaint that the Attorney General had targeted them for deportation because of their affiliation with a politically unpopular group, the Popular Front for the Liberation of Palestine. *AADC,* 525 U.S. at 473, 119 S.Ct. 936. The Supreme Court held that § 1252(g) deprived courts of jurisdiction over the aliens' claim because it challenged the Attorney General's decision to "commence proceedings" against them and thus fell squarely within the language of the statute. *Id.* at 487, 119 S.Ct. 936. However, the Court warned that subsection (g) should be interpreted narrowly and stated:

> The provision applies only to three discrete actions that the Attorney General may take: her "decision or action" to "*commence* proceedings, *adjudicate* cases, or *execute* removal orders." There are of course many other decisions or actions that may be part of the deportation process—such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order ... It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings.

*Id.* at 482, 119 S.Ct. 936. The *AADC* Court found a narrow reading of the provision supported by Congress' purpose in passing it—i.e., to alleviate judicial constraints upon prosecutorial discretion.[9] *Id.* at 485–87, 119 S.Ct. 936.

9. The Supreme Court found that Congress enacted § 1252(g) specifically in response to aliens' challenges in the courts to the Executive's decision to deny deferred action. The Court explained:

> 'ther[e] was good reason for Congress to focus special attention upon' these three acts because 'a[t] each stage the Executive has discretion to abandon the endeavor [i.e.

removal], and at the time IIRIRA was enacted the INS had been engaging in a regular practice (which had come to be known as 'deferred action') of exercising that discretion for humanitarian reasons or simply for its own convenience' ... aliens had started to bring cases challenging the INS's decision not to exercise its discretion to allow aliens to stay in this country ... 'Sec-

The Sixth Circuit Court of Appeals has issued a number of opinions since *AADC* reemphasizing that § 1252(g) must be interpreted narrowly. *See, e.g., Mustata v. U.S. Dep't of Justice,* 179 F.3d 1017, 1020 (6th Cir.1999); *Pak v. Reno,* 196 F.3d 666, 671 (6th Cir.1999). In *Mustata,* the court held that the provision did not deny the district court jurisdiction to hear aliens' claims alleging ineffective assistance of counsel during their deportation proceedings. *Mustata,* 179 F.3d at 1022. The court explained that while the aliens' claim arose out of their deportation hearing, they were not challenging the Attorney General's decision to adjudicate their claim. *Id.*

■ Similarly, plaintiffs' claims in the instant case do not fall within any of the three Attorney General decisions or actions covered by § 1252(g). Contrary to the Government's claim, plaintiffs' challenges to the Creppy directive are wholly independent from the Attorney General's decision to adjudicate Haddad's case. In fact Chief Immigration Judge Creppy issued the directive before Haddad was arrested and removal proceedings against him were commenced. Thus judicial review of plaintiffs' claims in no way interferes with the Attorney General's discretion over Haddad's removal and § 1252(g) is not a bar to this Court's jurisdiction over plaintiffs' claims.

### C. INA § 242(b)(9), 8 U.S.C. § 1252(b)(9)

While subsection (g) has been interpreted narrowly and held not to apply to the universe of deportation claims, courts have interpreted subsection (b)(9) of the INA's judicial review provision more expansively. That section provides:

> tion 1252(g) seems clearly designed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations ...'

Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

8 U.S.C. § 1252(b)(9). The Government reads this provision in conjunction with § 1252(a)'s exclusive grant of jurisdiction for review of removal orders in the Court of Appeals to find a clear intent by Congress that *any* claim arising from an action taken in removal proceedings must be heard in the Court of Appeals and not before the removal order is administratively final. *See* Govt's 12(b)(1) Mot. at 10.

■ The opening language of subsection (b), however, provides: "With respect to review of an order of removal under subsection (a)(1) of this section, the following requirements apply." 8 U.S.C. § 1525(b). The plain language of the statute therefore clearly indicates that § 1252(b)(9) is limited to actions challenging "*an order of removal* under subsection (a)(1)." 8 U.S.C. § 1252(b)(9) (emphasis added). In fact in *INS v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), the Supreme Court clarified its previous description of § 1252(b)(9) as a "zipper clause," stating that "[i]ts purpose is to consolidate 'judicial review' of immigration proceedings into one action in the court of appeals, *but it applies only 'with respect to review of an order of removal under subsection (a)(1).'*" *Id.* at 2286 (emphasis added). Thus the Supreme Court explained that subsection (b)(9) does not implicitly negate other grants of jurisdiction in the district

*Mustata v. U.S. Dep't of Justice,* 179 F.3d 1017, 1021 (6th Cir.1999)(quoting *AADC,* 119 S.Ct. at 943–44).

courts, such as habeas corpus review over collateral constitutional issues.[10] *Id.* at 2283–84.

### D. Other Support Cited by the Government

The Government additionally refers to §§ 1252(a)(2)(B)(ii), 1252(f)(1), and 1329 to support its argument that this Court lacks jurisdiction to hear plaintiffs' claims. *See* Govt's 12(b)(1) Mot. at 10 n. 11. With respect to § 1252(f)(1), that section refers to the power of courts to enjoin or restrain the operations of the provisions of part IV, which is not being requested here.[11] And § 1252(a)(2)(B)(ii) applies only to decisions or actions of the Attorney General "the authority of which is specified under this chapter."[12] That chapter is subchapter II of Chapter 12 of Title 8, which covers sections 1151 through 1378. *See CDI Info. Servs. v. Reno,* 278 F.3d 616, 619 (6th Cir.2002).

In *CDI Information Services,* the government and the plaintiffs (an alien and his potential employer) had argued that the attorney general's decision to deny the plaintiff's petition for extension of the alien's visa, did not fall within § 1252(a)(2)(B)(ii) because the decision did not involve a final deportation order. *Id.* at 618. The Sixth Circuit Court of Appeals rejected the parties' interpretation of that section and held that it applies to discretionary decisions of the attorney general within subchapter II, regardless of whether those decisions are made outside of the removal context. *Id.* at 620. In doing so, the court rejected other circuit courts' narrow interpretation of the section which relied primarily on the fact that § 1252 is entitled "Judicial Review of Orders of Removal." *Id.* at 619.[13] The court therefore held that it lacked subject matter jurisdiction over the plaintiffs' challenge to the INS decision not to extend the alien's visa. *Id.* at 620.

*CDI Information Services* is distinguishable from the present matter because it involved a challenge to a *substantive* deci-

---

**10.** The *St. Cyr* Court noted that the INS had a large hurdle to overcome in order to show that § 1252 revoked judicial review of the challenges presented in that case:

> For the INS to prevail it must overcome both the strong presumption in favor of judicial review of administrative action and the longstanding rule requiring a clear statement of congressional intent to repeal habeas jurisdiction ... Implications from statutory text or legislative history are not sufficient to repeal habeas jurisdiction; instead, Congress must articulate specific and unambiguous statutory directives to effect a repeal.

*St. Cyr,* 121 S.Ct. at 2278–79 (internal citations omitted).

**11.** 8 U.S.C. § 1252(f) provides:

> Regardless of the nature of the action or claim or the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter ... other than with respect to

the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

**12.** The full text of 8 U.S.C. § 1252(a)(2)(B) provides:

> Notwithstanding any other provisions of law, no court shall have jurisdiction to review—
>
> (I) any judgment regarding the granting of relief under section 1182(h), 1182(I), 1229c, or 1255 of this title, or
>
> (ii) any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General, other than the granting of relief under section 1158(a) of this title.

**13.** The Sixth Circuit found that "such a reading is inconsistent with the canon of statutory construction that the title of a statute or statutory section generally cannot be used to constrict the plain language of the statute." *CDI Info. Servs.* at 619 (citations omitted).

sion by the Attorney General made pursuant to the discretion granted to her under subchapter II. In fact, all of the cases relied upon by the Sixth Circuit in that case addressed challenges to similar substantive discretionary decisions. *See id.* at 620 (citing *Van Dinh v. Reno,* 197 F.3d 427, 432 (10th Cir.1999))(holding that attorney general's discretionary decisions to transfer aliens from one facility to another and to grant or deny relief from such a transfer is contained within 8 U.S.C. § 1231(g)(1) and thus falls within subchapter II); *Avramenkov v. INS,* 99 F. Supp 2d. 210, 214 (D.Conn.2000)(same); *Curri v. Reno,* 86 F. Supp 2d. 413, 419 (D.N.J.2000)(finding denial of decision to temporarily parole alien pursuant to 8 U.S.C. § 1182 within discretionary decisions of attorney general not subject to review pursuant to subsection (a)(2)(B)(ii)); *McBrearty v. Perryman,* 212 F.3d 985, 987 (7th Cir.2000)(holding that refusal to adjust alien's status to that of lawful permanent residents pursuant to 8 U.S.C. § 1255 not subject to judicial review under subsection (a)(2)(B)(i)). In comparison, the Attorney General's decision to close Haddad's and other "special interest" cases does not fall within the discretionary decisions outlined in subchapter II. Rather, if the Attorney General is acting pursuant to any authority, it is his general authority over immigration matters pursuant to 8 U.S.C. § 1103.

This limitation on the Sixth Circuit's interpretation of subsection (a)(2)(B)(ii) is further supported by the fact that the provisions of § 1252 generally are directed at protecting the Attorney General's discretion with respect to substantive decisions. *See, e.g.,* 8 U.S.C. § 1252(a)(2)(A)(limiting review of any claim arising from the inspection of aliens arriving in the United States); § 1252(a)(2)(B)(barring review of denials of discretionary relief, for example, as to receipt of visas and cancellations of removal); § 1252(a)(2)(C)(barring review of final removal orders against criminal aliens); § 1252(b)(4)(D)(limiting review of asylum determinations for resident aliens); § 1252(g)(barring review of decision to commence or adjudicate removal proceedings or execute removal order). The plaintiffs in this matter challenge a procedural decision, not substantive discretionary decisions such as the decision to deport, detain, or grant or extend a visa as was addressed in *CDI Information Services* and the cases cited therein.

Finally, with respect to § 1329, the Government claims that it limits district court jurisdiction to only those actions "brought by the United States." [14] The Government provides no authority to support its interpretation of this provision as depriving the district court of jurisdiction over all claims brought by anyone but the United States. And the existence of many cases brought by aliens in the district courts in which subject matter jurisdiction was upheld clearly contradicts such an interpretation. *See, e.g., St. Cyr,* 121 S.Ct. 2271; *Rosales–Garcia v. J.T. Holland,* 238 F.3d 704 (6th Cir.)(holding that district court had jurisdiction to decide alien's challenge to indefinite detention by the INS), vacated and remanded on other grounds, —— U.S. ——, 122 S.Ct. 662, 151 L.Ed.2d 577 (2001).

Accordingly, being fully advised in the premises, having read the pleadings, and

**14.** 8 U.S.C. § 1329 provides in relevant part: The district courts of the United States shall have jurisdiction of all causes, civil and criminal, brought by the United States that arise under the provisions of this subchapter ... Nothing in this section shall be construed as providing jurisdiction for suits against the United States or its agencies or officers.

for the reasons set forth above, the Court hereby orders as follows:

The defendants' motion to dismiss complaint for lack of jurisdiction is **DENIED.**