United States Court of Appeals
Fifth Circuit

**F I L E D**

July 14, 2005

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 04-60650

_____

CARLOS ARTURO GUERRA,

Petitioner,

v.

ALBERTO R. GONZALES, U.S. Attorney General,

Respondent.

_____

On Petition For Review from an Order of
the Board of Immigration Appeals

_____

Before KING, Chief Judge, and DAVIS, Circuit Judge, and
FITZWATER*, District Judge.

W. EUGENE DAVIS, Circuit Judge:**

Carlos Arturo Guerra (Guerra) challenges an order of the
Board of Immigration Appeals (BIA) affirming the Immigration
Judge's (IJ) order of removal due to Appellant's drug trafficking
conviction. For the reasons stated below, we affirm the BIA's
order.

_____

*U.S. District Judge, Northern District of Texas, Sitting by
Designation.

**Pursuant to 5ᵀᴴ CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5ᵀᴴ CIR. R. 47.5.4.

-1-

I.

Guerra, a native and citizen of Colombia, entered the United States illegally in the 1980s. In 1991, his status was adjusted to that of a lawful permanent resident. Guerra married a U.S. citizen with whom he had three children.

For about ten years, Guerra was involved in drug trafficking with a cartel from Colombia. In 1999, he entered a guilty plea and was convicted in Florida of conspiracy to possess with intent to distribute cocaine.

Guerra agreed to assist the government in its case against other participants in the cartel. Consistent with this agreement, he testified against other individuals involved with the drug cartel. In exchange for his testimony, he received consideration toward his sentence and immunity from further prosecution. Guerra was sentenced to 70 months in prison.

On September 10, 2003, the Department of Homeland Security (DHS) served Guerra with a Notice to Appear, charging that he was removable as an alien convicted of a controlled substance offense. Guerra conceded removability and filed an application for protection under the United Nations Convention Against Torture[3] (CAT).

---

[3]The U.S. ratified CAT in 1994 and the INS adopted implementing regulations that became effective on March 22, 1999. Under the CAT regulations, a new form of withholding of removal was created for aliens who fear being subjected to torture in their home countries. See DAVID WEISSBRODT & LAURA DANIELSON,

In his CAT application and his testimony at a hearing before the IJ, Guerra stated that his wife received a phone call threatening his life and the life of his family.  He also stated that one of the individuals against whom he testified threatened him in open court during his testimony at that person's trial. Another person against whom he testified, Norman Betancur, is now a fugitive in Colombia. Guerra argued that an "interactive" relationship exists between guerrilla organizations involved in drug trafficking and the Colombian government. Guerra stated that the investigators and prosecutors with whom he worked warned him that his cooperation would put him in danger and that they were aware of threats made against him and another cooperating witness. In short, Guerra contends that if he returns to Columbia, members of the cartel still in that country or their friends and supporters will hunt him and his family down and kill them.

The IJ ordered Guerra deported based on his drug trafficking conviction and denied the CAT application because he found that Guerra failed to demonstrate that it is more likely than not that he would be tortured either with or without the support or acquiescence of the Colombian government.  The BIA summarily denied Guerra's appeal and affirmed the order of the IJ.

II.

Based on these facts, Guerra argues that the DHS'

IMMIGRATION LAW AND PROCEDURE §10.22, at 328-29 (5th ed. 2005)

deportation of him is in violation of CAT and substantive due process guaranteed by the U.S. Constitution based on a "state created danger" theory.

This court has no jurisdiction to review removal orders issued by the BIA for aliens who have been convicted of a controlled substance offense. See 8 U.S.C. § 1227(a)(2)(B); Calcano-Martinez v. INS, 533 U.S. 348, 350 (2001); Balogun v. Ashcroft, 270 F.3d 274, 277-78 (5th Cir. 2001).

Petitioner argues however that his removal would violate his substantive due process rights guaranteed by the U.S. Constitution. We have jurisdiction to review a Constitutional challenge to an alien's removal. See Assaad v. Ashcroft, 378 F.3d 471, 475 (5th Cir. 2004). Therefore, while we are barred from reviewing the IJ and BIA's decision on Guerra's CAT claim, we do have jurisdiction over his claimed due process violation.

Guerra argues that, in taking and using his testimony against the drug cartel and then deporting him to Colombia, where the government cannot or will not protect him, the DHS is creating a significant danger to Guerra's life.

The Supreme Court has applied the state created danger theory in limited circumstances in the § 1983 context. See DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189 (1989). The Court has not applied this theory in an immigration case. This court has also applied the theory in a § 1983 case in the limited circumstance where the plaintiff was involuntarily

-4-

confined by a state. See Walton v. Alexander, 44 F.3d 1297, 1299 (5th Cir. 1995). See also McKinney v. Irving Independent Sch. District, 309 F.3d 308, 313 (5th Cir. 2002); McClendon v. City of Columbia, 305 F.3d 314 (5th Cir. 2002). This court has also not applied the state created danger rule in the immigration context.

After reviewing the record made before the immigration judge in this case, we are satisfied that even if the state created danger theory is applicable in an immigration case, the facts of this case do not support its application here.

We have no reason to believe that the Supreme Court would, under any circumstances, apply the state created danger theory in an immigration case unless the petitioner established that the state actors created or increased the danger to the plaintiff. That is the underlying premise upon which the doctrine is based. See DeShaney.

In this case, the IJ found that Guerra failed to establish that his life will be in danger if he is deported to Colombia. The only definitive evidence of danger that was presented to the IJ was evidence of a single phone threat to his wife and a threat in open court by a defendant against whom Guerra was testifying. Both of these threats apparently occurred around the time Guerra was incarcerated in 1999 or 2000. Guerra produced no additional evidence of any continuing threats or other manifestations of danger that may await him if he returns to Colombia.

For the above reasons, we conclude that even if the state

-5-

created danger theory is a viable one in the immigration context, based on the record evidence in this case, it has no application here. We therefore reject Guerra's substantive due process claim.[4] Having considered Guerra's constitutional challenges to the removal order, we find no error in the BIA's conclusion and affirm its order.

AFFIRMED.

---

[4]Guerra also argues that he was denied a fundamentally fair trial because his counsel provided ineffective assistance. This claim was not raised below, but, in any event, it is meritless. Guerra had no Sixth Amendment rights to counsel at his hearing. Goonsuwan v. Ashcroft, 252 F.3d 383, 385 n.2 (5th Cir. 2001), citing Mustata v. U.S. Dep't of Justice, 179 F.3d 1017, 1022 n.6 (5th Cir. 1999); Paul v. INS, 521 F.2d 194, 198 (5th Cir. 1975). Also, the BIA took administrative notice of the State Department report on country conditions in Colombia which presented similar information as the U.N. Committee Against Torture report, one of the two documents Guerra contends his counsel was ineffective in failing to produce. Additionally, the BIA stated that even if it were to consider the U.N. Committee report, it would not alter the result of the case. The other document Guerra complains his counsel did not produce is a letter allegedly written from a U.S. Attorney to the Department of Homeland Security asking the DHS to give relief to Guerra. Although Guerra referred to this letter at the hearing, he did not establish that it ever existed. Guerra failed to demonstrate that his hearing was fundamentally unfair.